STATE, JOSEPH WELLS, Complainant, *vs.* WILLIAM CUSTER.

FEBRUARY 18, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Elections. Vote. Ballot. Fraudulent Voting. Criminal Complaint.*

As the word "vote" as used in Gen. Laws cap. 14, § 2, "Of elections," imports a ballot marked according to law, it is sufficient, in a complaint under said section, to charge that the defendant did "give in his vote" as it follows that the ballot was thus marked for some or all of the officers then to be voted for, and the complaint is sustained by proof of such voting for any one of them without an averment of the particular office or officers for whom or for which he voted.

(2) *Elections. Fraudulent Voting. Sufficiency of Complaint.*

Gen. Laws cap. 14, § 2, relative to fraudulent voting, prohibits every person from "voting or attempting to vote in a town, ward, or voting district other than in the town, ward or voting district wherein he has his residence and home at the time of his voting or attempting to vote":—

*Held,* that, in a complaint under said section, an averment that the defendant "did not then have his residence and home in said town" was a sufficient allegation of disqualification to vote at an election held in said town.

(3) *Elections. Fraudulent Voting. Sufficiency of Complaint.*

*Held,* further, that the words in a complaint "At a meeting of the electors of said town of North Providence duly and in due form of law had and held for the choice of town officers, State officers, and a representative in congress" were a sufficient description of an election within the meaning of the statute.

*Held,* further, that, under said complaint, the defendant was sufficiently apprised that the town officers were officers of the town in which he is alleged to

have voted; the State officers were officers of this State, and the representative in congress was a representative in the congress of the United States.

CRIMINAL COMPLAINT, under General Laws chapter 14, section 2. Certified to Supreme Court from District Court of the Sixth Judicial District under provisions of court and practice act section 478.

BLODGETT, J. Under the provisions of section 478 of the court and practice act the District Court of the Sixth Judicial District has certified for our determination certain questions arising upon a demurrer to the following complaint for an alleged violation of chapter 14, section 2, General Laws, viz.:

"Joseph Wells, a citizen of North Providence in the county of Providence and State of Rhode Island, on oath complains, in the name and behalf of the State, that at said North Providence, in said county, on the sixth day of November, A. D. 1906, with force and arms, William Custer of said Providence, laborer, did then and there at a meeting of the electors of said town of North Providence duly and in due form of law had and held for the choice of town officers, State officers and a representative in Congress, not being and knowing himself not to be then and there fully qualified to vote thereat, by reason that he did not then and (there) have his residence and home in said town of North Providence, willfully and fraudulently on said day and year at said North Providence, give in his vote for persons to serve in said offices as though he were and as pretending to be qualified, against the statute and the peace and dignity of the State," etc.

The provisions of the statute in reference thereto are thus expressed:

"SEC. 2. Every person who, in any election, shall fraudulently vote or attempt to vote, not being qualified, notwithstanding his name may be on the voting-list at the polling-place where he shall so vote or attempt to vote; or who shall fraudulently vote upon the name of any other person, or, having voted in one town, ward, or voting-district, shall vote or attempt to vote in the same or in another town, ward, or voting-district;

or who shall fraudulently vote or attempt to vote in a town, ward, or voting-district, other than in the town, ward, or voting-district wherein he has his residence and home at the time of his voting or attempting to vote, shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment not less than sixty days nor more than one year, or by both such fine and imprisonment in the discretion of the court; and no person after conviction of such offence shall thereafter be permitted to exercise the privilege of voting for any military or civil officer."

(1)     The first question is this:

"I.   Is it necessary for the complainants to allege for whom the defendant voted or how his ballot was marked or even that it was marked or anything more than that he did 'give in his vote' or that he had voted?"

The answer to this question obviously depends upon the significance of the word "vote" as used in the statute and in the complaint.

In considering the meaning of the word "vote" it was said in *Gillespie* v. *Palmer, et als.,* 20 Wis. 572, 581: "What is the meaning of the word 'vote'?   It is the expression of the choice of the voter for or against any measure, any law, or the election of any person to office.   At a general election, there are several officers, both State and county, to be elected, and there may be measures to be voted on.   The expression of the choice of the voter in favor of any candidate for office by depositing a ballot for him, is a vote for such candidate; and if there are several candidates for different officers, and the voter votes for each, he casts in so doing as many different votes as there are candidates for whom he votes; and it makes no difference that they are all on one piece of paper or ticket."

Again, in *Davis* v. *Brown,* 46 W. Va. 716, 723, the court says: "While the terms 'ballot' and 'vote' are sometimes confused, and while they may sometimes be used synonymously, the ballot is, in fact, under our form of voting, the instrument by which the voter expresses his choice between two candidates or two propositions; and his vote is his choice or election between

the two, as expressed by his ballot; and when his ballot makes no choice between any two candidates, or on any question, then he casts no vote for either of these candidates or on the question. Those ballots are not votes."

The distinction here made is aptly illustrated in the provisions of article VIII section 2 of the constitution of this State, as follows: "The *voting* for governor, lieutenant-governor, secretary of state, attorney-general, general treasurer and representative to congress shall be by *ballot.*" Indeed, our statute punishing illegal voting is older than the present constitution of the State, and it follows that the meaning which attached to the word "vote" at the time it was first so used should properly be considered in the construction of the statute now under consideration. The difference between the act and the method of voting prior to the adoption of the Australian ballot, so called, and the method now provided by law is thus described in *State, ex rel. Runge,* v. *Anderson,* 100 Wis. 523, 530 (1898): "The word 'ballot' and the expression 'vote by ballot' had a well-understood and universal meaning at the time of the adoption of the constitution, and it must be taken as the law that the thought which was in the minds of the framers of the constitution was in harmony with such meaning. Any attempt to go outside of that would be usurpation, not interpretation or construction. It would be a method of judicial procedure that would render any legislation, however plainly worded, subject to change by judicial construction to suit the judgment of courts as to the best legislative policy. The word 'ballot' means, in the election of public officers, and always meant, a paper so prepared by printing or writing thereon as to show the voter's choice, and 'vote by ballot' the deposit of such paper in a box in such a way as to conceal the voter's choice if he so desires. . . . The official ballot, so called, is not complete when furnished to the elector as he enters the booth to prepare his ballot. It is a mere form for a ballot. When marked and prepared by the voter so as to show his choice at the election, then, and not till then, does it become his constitutional ballot."

The provisions of our statute are widely different from the

provisions of the federal statute formerly in force (Section 5514, Revised Statutes of the United States), as follows:

"SEC. 5514. Whenever the laws of any State or Territory require that the name of a candidate or person to be voted for as Representative or Delegate in Congress shall be printed, written, or contained, on any ticket or ballot with the names of other candidates or persons to be voted for at the same election as State, territorial, municipal, or local officers, it shall be deemed sufficient *prima-facie* evidence to convict any person charged with voting, or offering to vote, unlawfully, under the provisions of this chapter, to prove that the person so charged cast or offered to cast such a ticket or ballot whereon the name of such Representative or Delegate might by law be printed, written, or contained, or that the person so charged committed any of the offences denounced in this chapter with reference to such ticket or ballot."

To the foregoing observations there may be added the provisions of section 38 of chapter 11 of the General Laws, as amended by section 6 of chapter 1229 of the Public Laws, passed April 26, 1905, and in force at the time of the alleged commission of the offence charged in the complaint under consideration. It is there prescribed what shall be done by an elector: "If he desires to *vote* for all the candidates of one political party" as well as what he shall do, "in case he desires to *vote* for a candidate whose name is not printed under the circle," etc., specifying further that an elector "shall *vote* for the candidate of his choice by making an X in the square opposite the name of the candidate of his choice," etc., and further providing "He shall *vote* in the manner provided by law before leaving the enclosed space," etc.

Inasmuch as the word "vote" as here used imports *ex vi termini* a ballot marked according to law, it follows that it is sufficient to charge that the defendant did "give in his vote," inasmuch as it follows that his ballot was thus marked for some or for all of the officers then to be voted for, and is sustained by the proof of such voting for any one of them without an averment of the particular office or officers for whom or for which he so voted.

(2)    The second question is: "Is the allegation of the complaint that the defendant 'did not then have his residence and home in said town' a sufficient allegation of disqualification to vote at an election then held in said town?"

This is unquestionably sufficient.    The language of the statute *supra* is specific, and prohibits every person from "voting or attempting to vote in a town, ward, or voting district other than in the town, ward, or voting district where he has his residence and home at the time of his voting or attempting to vote."

(3)    The third question is: "Do the words of the complaints 'at a meeting of the electors of said town of North Providence duly and in due form of law had and held for the choice of town officers, State officers and a representative in Congress' sufficiently describe an election within the meaning of the statute?"

We are of the opinion that this is sufficient.    The court can and should take judicial notice that the date of the alleged offence is the date prescribed by the statute, by section 2 of chapter 12 of the General Laws for a congressional election and the language of section 2 of article XI of amendments to the constitution not only provides for the date of the State election but provides also that certain officers "shall be elected at town, ward and district meetings," as follows:

"SEC. 2.    The governor, lieutenant-governor, secretary of state, attorney-general, general treasurer, and senators and representatives in the general assembly shall be elected at town, ward, and district meetings on the Tuesday next after the first Monday in November annually."

The fourth question is thus framed: "Is the allegation that a meeting was held for the choice of town officers, State officers and a representative in Congress sufficient without further allegation that the town officers were for the town of North Providence, the State officers for the State of Rhode Island and a representative in Congress for the Congress of the United States, and further a choice for approval or rejection of the Metropolitan Park Loan?"

We think the allegation in the complaint is sufficient in these respects. Article VIII section 2 of the constitution, *supra,* speaks of "representatives to congress" without further description. Chapter 12 of the General Laws is thus entitled: "Of the Election of Representatives in Congress," and the same term is used in section 3 of that chapter.

We are of the opinion that the defendant is sufficiently apprised that the town officers were the officers of the town in which he is alleged to have voted, the State officers were officers of this State and the "representative in Congress," a representative in the Congress of the United States.

The papers will be remanded to the District Court of the Sixth Judicial District, with our decision thereon, for further proceedings not inconsistent therewith.

*James C. Collins, Jr., and Green, Hinckley & Allen, and Guy Metcalf,* for State.

*John I. Devlin,* for defendant.