JOHN G. SCHEIBLE, PROSECUTOR, v. BOROUGH OF
    HIGHTSTOWN ET AL., RESPONDENTS.

Submitted February 10, 1919—Decided March 4, 1919.

1.  The requirements of the Soldiers' Vote act (*Pamph. L.* 1918, *p.*
    437) apply substantially to the same extent to a vote on local
    option, taken at a general election, as at a special election, and
    if the provisions of such Soldiers' Vote act have not been com-
    plied with, such election is invalid.
2.  It is not a substantial compliance with the provisions of the
    Soldiers' Vote act (*Pamph. L.* 1918, *p.* 437) that the secretary
    of state sent special agents to some of the military camps and a
    bundle of ballots and other papers by mail to the commanding
    officers of other camps, hoping that the ballots in some way
    would reach those for whom they were intended, when it ap-
    pears that neither ballots nor copies of the law nor voting in-
    structions were mailed to the several voters.
3.  Prosecutor held not barred by laches, where the election took
    place in November, thirty days thereafter were allowed by law
    to count the soldier vote, and writ was applied for and allowed
    in January.

On *certiorari.*

Before Justices PARKER and MINTURN.

For the prosecutor, *Harry Heher.*

For the respondents, *Aaron V. Dawes, James Hammond*
and *George S. Hobart.*

The opinion of the court was delivered by

PARKER, J.    The writ attacks the validity of a popular
vote taken at the last general election on the question whether
the sale of liquor should be prohibited thereafter in the bor-
ough of Hightstown.    The principal question in the case.
and the only question requiring specific examination for the
purposes of a decision, is that relating to the casting of the
soldier and sailor vote.    We have already had occasion to deal
with this subject in the group of cases recently decided under

the title of *Miller* v. *Montclair,* 92 *N. J. L.* 292. In those cases, however, the election was called for a special day, and is known to the statute as a special election. We sustained the finding of the Chief Justice and other justices, sitting singly as a summary court under the statute, that the several elections must be set aside because of failure to comply with the requirements of the Soldiers' Vote act (*Pamph. L.* 1918, *p.* 437), but expressed no view with relation to the soldier vote at a local option referendum held at the same time and voted on the same ticket with the general election. Individual justices had intimated a distinction, as in the opinions of Mr. Justice Kalisch in the *Holman Case,* 104 *Atl. Rep.* 212, and the *Lamb Case,* 105 *Id.* 448, the result in which we upheld a few days ago. For the first time, we think, this question relating to a local option ballot voted on the day of general election is squarely presented as a necessary ground of decision. It comes up in a double aspect, viz.: (1) Is it necessary to the validity of the result of an election held at such a time that the requirements of the Soldiers' Vote act should be substantially complied with; and (2), if so, was there a failure of such substantial compliance?

On the first branch of the inquiry the result we reach is that the substantial compliance is a requisite to the validity of the vote even at a general election. The act itself makes no distinction in its mandate; by its express language it applies to general, special and primary elections. And, as we observed in the Miller case, the act disregards the doctrine of constructive notice, even to some extent as to its own existence as a law, by requiring transmission to the soldier of a copy of the act, or printed directions how to cast a ballot thereunder, official or unofficial. We also held that failure of compliance was not a mere irregularity; and the fact that strict compliance was rendered impracticable by reason of the exigency of national regulations did not excuse the state and local authorities from the performance of the duties laid on them by the statute. As was said by Mr. Justice Bergen, in deciding the case of Thompson *v.* South Brunswick, in

discussing the difficulty of carrying out the law, the fault is with the law and not with its construction. The absent voter was entitled either to a proper form of ballot and enclosing envelopes, or a copy of the law, or directions how to prepare and cast his vote, and without either "he had no notice such as the law intends he shall have, of the character of the ballot he was entitled to prepare and use　*　*　*."

The fact that the referendum was voted on, on the day of the general election, and at that election does not, in our judgment, affect the force of this reasoning. It was said, in *Brown* v. *Street Lighting District*, 70 *N. J. L.* 762, that where the time, place and purpose of an election are fixed by public law, all voters must take notice thereof, &c. The learned justice who wrote that opinion did not have before him the Soldiers' Vote act with the express requirements to which we have just called attention; and, moreover, it is to be observed that his language does not cover this case, for the time of the election on the local option is not fixed by public law in the sense he intended but by the joint action of the legislature and certain petitioners. A parallel case would be one where the legislature has provided that on the day of general election the several municipalities through their respective electorates shall vote on prohibition; in other words, the time, place and purpose of the election should appear on the face of the statute without recourse to any *aliunde* information. We think the correct reasoning is found in that line of cases from other jurisdictions cited in prosecutor's brief, that when the question of an election *vel non* on a certain subject depends on the action not only of the legislature but also of some other agency, such election, whenever held, is a special one, and the doctrine of the Brown case does not apply. 22 *L. R. A.* 483. The legislature might as well have designated some other day, as the second Tuesday of December, for the referendum election in cases where the petition is signed by less than thirty per cent. of the voters. It seems quite clear that such an election would be special. The fact that the day of general election is designated was no doubt due to considerations of expense and convenience; whether

there should be a vote at all on the day designated depends, as we have said, on the action of citizens of which other citizens are not bound to take notice, as well as of the law-making body.

Concluding, then, as we do, that the requirements of the Soldiers' Vote law apply substantially to the same extent to a vote on local option taken at a general election, as to a special election thereon, we take up the claim that there was no substantial compliance with them, and find it well founded. It appears that ballots were not mailed to the several voters nor were copies of the law nor voting instructions; as we understand the facts, the secretary of state sent special agents to some of the camps, and a bundle of ballots and other papers by mail to the commanding officers of other camps, hoping that the ballots in some way would reach those for whom they were intended; that the plan was not authorized by the act is perfectly plain; that it failed of its purpose is indicated by the fact that a comparatively insignificant number of ballots came back. No doubt the secretary of state did the best he could, but this was not enough. Evidently, he could not obtain the individual names and addresses from an over-burdened war department and in the face of rules denying information. But the names were no doubt ascertainable in the borough; most of them, at all events; and the military addresses, in care of the respective organizations, were, or should have been, procurable. If the referendum was of paramount importance, it justified a special effort to get the ballots and voting information to the soldiers and sailors; and no special effort of the kind intimated seems to have been made.

The counter argument that the general election for local officers and members of the legislature must also be considered vitiated does not appeal to us. The distinction, and the reason for it, are forcibly pointed out in the deliverance of the Chief Justice sitting in the Montclair case. His remarks are too long to quote here, but the point is that the over-turning of a governmental election as distinguished from what he significantly calls a sociological one, is a matter to

which other considerations of grave public consequence apply, particularly the importance of having officers to carry on public affairs. The special question now under consideration has no such features. Whether the saloons shall close to-day, or await another election at which all shall have their chance to vote, is a matter concerning the general public welfare; like the abolition of a smoke nuisance, for example, but not striking at the administration of government in any direct way, as in the other case. On the whole, our conclusion is that the referendum was vitiated by the totally inadequate provision for securing the absentee vote.

Laches is urged. The election occurred early in November. The writ was allowed in January. If prosecutor had applied immediately after election, *allocatur* might well have been denied on the ground that the soldier vote might turn the result the other way. The law allowed thirty days to count that vote; so, the delay was something over a month. We are unwilling to say that prosecutor should be barred on this account. We think, however, that no costs should be allowed to either party.