## THOMAS B. STRAUGHAN, Contestant, v. CHARLES W. MEYERS, Appellant.

**In Banc, July 18, 1916.**

1. **ELECTIONS: Absent Voters: Special Law: Applicability to One City.** The Act of 1913, Laws 1913, p. 323, providing methods by which absent voters may cast their ballots at any precinct in the State and have them counted in the precinct of their residence is not a special law, does not apply solely to the county and city of St. Louis, and does not violate the provision of the Constitution (Art. 4 sec. 53) declaring that "the General Assembly shall not pass any local or special law for the opening and conducting of elections, or fixing or changing the places of voting."

2. ———: ———: ———: **Aided by Title.** A section of a statute, which in certain of its terms is ambiguous, may be aided by its title as a clue and guide to the legislative intention; and since the title to the Act of 1913, Laws 1913, p. 323, providing methods by which legal voters required to be absent from their voting precincts on any general election day, may cast their ballots and have them counted in the precinct of their residence, in clear and uncertain terms makes the act apply to all counties and all absent voters, resort may be had to it to clarify the ambiguity of section 1 which standing alone might seem to restrict the applicability of the act to the city and county of St. Louis. Doubtful words of a statute may always be enlarged or restricted in their meaning to conform to the true intent of the lawmaker, when aided by sound principles of interpretation.

3. ———: ———: **Sixty Days' Residence.** The provision of the Constitution requiring a legal voter to "have resided in the county, city or town where he shall offer to vote at least sixty days immediately preceding the election" did not inhibit the Legislature from providing a method by which an absent legal voter may have his vote, wherever cast within this State, counted in the precinct in which he has been a resident for sixty days, his choice being confined to candidates and matters relating to the place where he does reside. The Act of 1913 does not attempt to authorize a legal voter to vote in any place other than his residence. Legal voting embodies the right to have the vote counted. The word "vote" is not synonymous with ballot, which is merely the instrument by which the voter expresses his vote or choice. The Constitution pre-

scribes no place where the ballot may be deposited with election officials; it simply means that, wherever initially deposited, it can be counted only in the precinct in which the voter has a legal residence and does not undertake to prescribe methods of voting.

4. ———: ———: **Numbering Ballots.** The Act of 1913 relating to methods by which the ballots of absent voters may be received by. election judges at any election precinct in the State and when enclosed in an envelope and filed with the county clerk be by him transmitted to the county clerk of the county in which the voter resides, and further providing that "the county court or board of election commissioners shall open said envelope and record said ballot upon tie poll sheet of the proper precinct," does not violate the provision of the Constitution (Art. 8, sec. 3) which declares that all ballots shall be numbered in the order in which they shall ʹʹe received "and the number recorded by the election offiꭆers on the list of voters opposite the name of the voter who ᴐresents the ballot." The act without specifically so requiring, implies that the ballots will be numbered by the county court or the board of election commissioners, who are "election officers," and the act cannot be held unconstitutional because it does not specifically require them to number the ballots so received.

5. ———: ———: **Affidavit and Signature of Judges: Mandatory.** The requirements of the Act of 1913 pertaining to the right of absent voters to vote at some other precinct than the one of their residence that the voter shall make and subscribe to the prescribed affidavit and that his ballot shall have the names of all the judges on the back thereof, are mandatory, and essential to the counting of the ballot and it is incumbent upon the voter to see that they are complied with, and no ballot which does not contain suck affidavit and signatures can be counted.

6. ———: ———: ———: **Validating Ballot.** A failure to take the voter's affidavit in the manner prescribed by the statute cannot be supplied by an election officer going after the date of the election to the county of the, voter's residence and there taking his affidavit. Nor is an affidavit taken in a county other than that in which the ballot is cast sufficient.

7. ———: ———: **Signature of All Judges.** Nor is a ballot which does not have indorsed thereon the signature of all the election judges legal.

Appeal from Ste. Genevieve Circuit Court.—*Hon. R. G. Ramsey*, Judge.

AFFIRMED.

*Thomas B. Whitledge, Samuel Bond* and *William C. Boverie* for appellant.

(1)   The title to the Absentee Voter Act is sufficient to include and make operative all of the provisions of the act.   State ex rel. v. Ransom, 73 Mo. 78; State ex rel. v. Wiethaupt, 231 Mo. 449; State ex rel. v. Railroad, 48 Mo. 468; Stephens v. Bank, 43 Mo. 385; State ex rel. v. Gordon, 170 S. W. 892; State ex rel. v. Vandiver, 222 Mo. 219; O'Connor v. Transit Co., 198 Mo. 622; Ewing v. Hoblitzelle, 85 Mo. 64; Sedgwick on Statutory & Const. Law, 521, quoted in Eltinge v. Hickman, 172 Mo. 237.  (2)  Courts are very reluctant to declare a law unconstitutional on a mere technicality.   The unconstitutionality  must   appear beyond a reasonable doubt.   State   v. Utle, 65 Mo. 361; State ex rel. v. Jockey Club, 200 Mo. 34.   (3) This act is not a local act, and is not unconstitutional as being repugnant to section 53 of article 4 of the Constitution.   It applies to all counties of the State and not especially to St. Louis County and city.  (4) The well settled law of this State is that where an honest voter presents himself at the polling place where he is entitled to vote and is   given   a ballot which he properly fills out, and it is deposited in the ballot box, and then departs, he is entitled to have it counted for the men whom he selected on his ballot, and the same cannot be rejected, because of mistake in law, error of judgment, wrongful act of omission or commission of any of the judges of election, unless the mistake, error of judgment or neglect to comply with the provisions of the election law consists in the omission of something that the law itself says is fatal, and only in such cases where the law itself says a ballot is not to be counted shall the vote be rejected.   West v. Ross, 53 Mo. 350; Ledbetter v. Hall, 62 Mo. 442; Gunn v. Hubbard, 97 Mo. 37; Hehl v. Guion, 155 Mo. 76; Gass v. Evans, 244 Mo. 238.   (5)

Failure of judges to put their initials or names on ballot, or to comply with any other provision of law, unless expressly stated by statute to be otherwise, does not vitiate ballot or disfranchise voter. Bowers v. Smith, 111 Mo. 61; Gass v. Evans, 244 Mo. 353.

. *Jerry B. Burks* for respondent.

(1) The Act of 1913, Laws 1913, p. 323, permitting electors to vote in counties other than that in which they reside, is unconstitutional, and the trial court did not err in excluding the thirteen ballots of absentee voters voting for defendant. By express language, said act applies only to the county and city of St. Louis, and is a local or special law, in contravention of Secs. 53 and 54, art. 4, Constitution of Missouri. Said act is further special legislation in that it applies only to a certain favored class of electors, when a general law applicable to all voters could have been enacted. Subsec. 32, sec. 53, art. 4, Constitution; State v. Hill, 147 Mo. 63; State v. Anslinger, 171 Mo. 600; State ex rel v. Messerly, 198 Mo. 351; State v. Miksecik, 225 Mo. 561; Murnane v. St. Louis, 123 Mo. 491. Said act further violates subsection 12 of said section 53, which inhibits any special law for opening or conducting elections or fixing or changing the place of voting. (2) This law, and any law which authorizes a voter to cast his ballot or offer to vote at a place other than the county, city or town in which he resides, is violative of the fundamental law governing elections. Subsec. 2, sec. 2, art. 8, Constitution. This provision of the Constitution requiring a residence of sixty days in the county, city or town where the voter shall offer to vote, is to safeguard the interests of the State and to prevent a fraudulent use of the ballot. So the voter must offer to vote and vote where he resides and is known. Chase v. Miller, 41 Pa. St. 419; Twitchell v. Blodgett, 13 Mich. 143; Day v. Jones, 31 Cal. 261; Bourland v. Hil-

dreth, 26 Cal. 161. There is no such constitutional mandate, expressly or impliedly, justifying any such enactment, as was held in case of State v. Etchman, 189 Mo. 656. (3) Said act is further obnoxious to the Constitution in that no provision is made for numbering the ballots cast; in fact, said act implies, if it does not expressly state, that said ballots should not be numbered. Sec. 3, art. 8, Constitution; West v. Ross, 53 Mo. 350. (4) Section 4 of said act is further vicious in that it permits the clerk and judges of the court, even though they are themselves candidates for office, to sit in judgment and pass upon the legality of ballots returned to them. (5) In any event, the seven ballots cast for Meyers by absent voters, at Commerce, in Scott County, were illegal. The names of all the judges were not endorsed on the ballots, nor were any affidavits made and subscribed to by said voters on the day of said election, at said precinct, during voting hours, in compliance with the imperative mandate of the statute, but on the contrary, said affidavits were made on the day following the election. Secs. 1 and 2, Laws 1913, p. 324. (6) The ballots of Schafer, Rehm, Donze and Owen, absent voters, and voting for Meyers, were illegal. No affidavit was made and subscribed to by Schafer. No names of judges were on the ballot of Rehm. No written affidavit was made and subscribed to by Owen. The affidavit of Donze shows on its face that it was made in Ste. Genevieve County. Laws 1913, p. 324, secs. 1, 2 and 4.

REVELLE, J.—This is a contested election case. At the last general election in Ste. Genevieve County, held on November 3, 1914, the contestant and contestee were opposing candidates for the office of presiding judge of the county court of said county. Both parties are elegible under the law to hold the office.

The notice and counter notice of contest, in addition to the necessary averments as to the nomination of candidates and the holding and results of the election as declared by the election officials, contain numerous averments charging specific objections to many of the votes cast, based on the alleged non-residence, non-age, and other disqualifications of the voters, as well as numerous irregularities of many of the ballots.

In addition to the foregoing grounds of contest, the contestant attacks the constitutionality of the Act of the General Assembly, approved March 14, 1913, relating to the manner in which voters who are absent from their place of residence may cast their vote. [Laws 1913, p. 323.]

Applications to the circuit court were made by both parties for writs directed to the clerk „of the county court, commanding him to open, count, compare with the lists of voters, and examine the ballots in his office which were cast at the election in contest, and to certify the result of such count back to said court. This was done, and according to the count made by the county clerk, as shown by his report, the contestant received a total of 1121 votes, and the contestee received a total of 1130 votes, a majority of nine votes in favor of contestee.

A certificate of election was accordingly issued to contestee, and he was duly commissioned as presiding judge of that court.

Such other facts as are material and essential to a determination of the questions presented will be noted in the opinion.

In this action the legislative act (Laws 1913, p. 323) relating to absent voters and prescribing the manner in which they may vote, is challenged as being obnoxious to the Constitution, and the facts are

such that a determination of this question is essential to a decision. The title to the act is:

"AN ACT to enable railroad employees, traveling salesmen and other persons, required by their duties or occupation to be absent from their voting precincts on the day of any general election, to cast their votes wherever within the State they may be and providing for the counting of such votes and prescribing penalties for violations thereof."

The body of the act provides that employees of railroad companies, traveling salesmen, college students, and all other persons who are qualified electors of this State, and who, by reason of their business, occupation or duties, are, on the day of the general election, unavoidably absent from the county in which they reside, may cast their ballots in any voting precinct of the State where they may present themselves on the day of the election. The act then proceeds to name the *conditions* and regulations under which the absent voter may avail himself of the privilege, and enjoins upon him certain duties, among which are: that he present himself during voting hours and make and subscribe, before one of the election judges, an affidavit relative to his residence and qualifications as an elector; the reasons of his absence from his county; and that he has not voted and will not vote elsewhere. This being done the act provides that he is then entitled to a ballot of a certain and specifically defined kind, to-wit, a blank ballot with the names of all the judges written on the back thereof. This ballot he is then authorized to mark, fold and hand to the judge in like manner as a resident voter. The act further provides that such ballot shall not be deposited in the ballot box nor entered upon the poll books, but shall *together with the affidavit,* be sealed in an envelope, which shall be signed

by one of the judges and be filed with the clerk of the county where the ballot was cast, and be by him transmitted to the clerk of the county where the voter resides.  Ample provisions are then made for recording and counting such votes in the county of the voter's residence, as well as for the preservation of the ballots and penalties for violation of the act.

The court *nisi* held the act   invalid   upon   the ground that it contravenes the 12th subdivision   of section 53, article 4, of the State Constitution, which is as follows:

"The General Assembly shall not pass any local or special law for the opening and conducting of elections, or fixing or changing the places of voting."

This conclusion was a sequence of the construction which the court placed upon the act, that, by its terms and title, it was applicable only to the city and county of St. Louis, and was, therefore, local and special.   The conclusion is unassailable if the construction placed upon the act be correct, but in this we disagree with the learned trial judge.

The title, instead of limiting the effect of the act to those two subdivisions and persons residing therein, in no uncertain terms, and, as clearly as language can express, makes it applicable to all counties, and all absent electors, wherever they may reside or be on the date of election, provided both places are in this State.  In fact, the title   so   unmistakably expresses the applicability of the act to the whole State that it would be more or less defective as a title to an act applicable only to the city or county of St. Louis.

It is urged, however, that the terms of section 1 do so limit and restrict it.  It is true this section is not drawn with the nicety and precision which characterizes the work of a linguist, but its intent and meaning is not difficult of understanding when read

with other parts. The worst that can be said of it is, that certain of its terms are ambiguous, and in that case we are at liberty to go to the title as a clue or guide to the intention of the Legislature. The title is clear, unambiguous and expressive, and, when invoked as an aid in the construction, removes all doubt as to the meaning. We have frequently said that doubtful words of a statute may be enlarged or restricted in their meaning to conform to the true intent of the law makers, when manifested by the aid of sound principles of interpretation. [State ex rel. Aull v. Field, 112 Mo. 554; Glaser v. Rothschild, 221 Mo. l. c. 211; Bingham v. Birmingham, 103 Mo. 345.] In dealing with subjects of this character we have also other well-established rules which cannot be ignored. We are reluctant to declare statutes unconstitutional, and we resolve all doubt in favor of their validity. We indulge the presumption that the Legislature did not intend to violate the organic law of the State, and we place the burden upon him who asserts the contrary to convince us. Acts of the Legislature and the provisions of the Constitution must be read together, and so harmonized as to give effect to both, when this can be consistently done.

We are of the opinion that the Legislature clearly intended this law to be of general application, and that it is not special or local, and, therefore, not offensive to section 53, article 4, of the State Constitution.

It is next urged by respondent that the act violates that part of section 2, article 8, of the State Constitution, which reads as follows:

"Every male citizen . . . possessing the following qualifications shall be entitled to vote at all elections by the people. . . . He shall have resided in the county, city or town where he shall offer to

vote at least sixty days immediately preceding the election.''

It is clear that this section does not undertake to prescribe the manner in which a choice shall be expressed, or a vote cast, or the ballots prepared, deposited or counted; but merely the qualifications of the voters. It is true, under this provision, a person can *vote* only in the place of his residence, but this constitutes no inhibition against any particular method the Legislature may provide to enable him to so vote. The word ''vote'' means suffrage, voice or choice of a person for or against a measure or the election of any person to office. It is not synonymous with ''ballot,'' which is merely the means or instrument by which the person *votes,* or rather expresses his choice or exercises his right of suffrage. [Clary v. Hurst, 138 S. W. 566; State ex rel. v. Blaisdell, 119 N. W. 360; State v. Custer, 66 Atl. 306; Gillespie v. Palmer, 20 Wis. 544; Davis v. Brown, 34 S. E. 839.]

Had this measure provided that such absent voter could *vote*, that is, could exercise a right of choice for or against matters relating to the place where he did not reside, for instance, candidates of a county or district other than that of his residence, there would be no doubt of its invalidity; but it does not so undertake. The act specifically provides that the ballot shall not be deposited in the ballot box, nor entered upon the poll books, but that same shall, under certain safeguards and regulations, be transmitted to the clerk of the county where the voter resides, and be there counted. The act of legally voting, as the term is understood in law, embodies the right to have the vote counted. This act does not undertake to authorize a person to *vote* in a place other than that of his residence, but merely provides

a system or method through which he may vote in the place of his residence.

It is not class legislation, because it applies alike to all persons who, by reason of their business duties, are unavoidably absent from their county. It is our opinion that this classification is not objectionable, and that the act does not violate the constitutional provisions heretofore pointed out.

It is next said that the act offends against that part of section 3, article 8, of the State Constitution, which provides that all ballots shall be numbered in the order in which they shall be received, and the number recorded by the *election officers* on the list of the voters opposite the name of the voter who presents the ballot.

The only provision in this act bearing upon this phase is the following: "The county court . . , or board of election commissioners . . . shall open said envelope or envelopes and record said ballot upon the poll sheet of the proper precinct or ward in their possession in the same manner as clerks of election record votes." There is nothing whatever in the act providing that the ballots of the absent voters shall not be numbered; nor is there anything in the act which would make the numbering thereof for the purposes contemplated by the Constitution inconsistent with its provisions. The most that could be said is that this part of the Constitution requiring ballots to be numbered is as much a part of this act as if it were employed therein; and there being nothing in the act inconsistent therewith, it cannot, for this reason, be said to be in conflict with the Constitution. In fact, the provision of the act heretofore quoted can reasonably and logically be so construed as to indicate an intention on the part of the Legislature that these ballots should be numbered by the county court or the board of election

commissioners. These officers are election officers within the meaning of this provision of the Constitution, and there is nothing therein contained which prevents the numbering of these ballots by such officers. This constitutional section does not undertake to point out what particular election officers shall perform this duty. It must also be borne in mind that the purpose of this section is to provide a means of contesting elections and so preserving evidence that it may be used for this purpose. The provisions of this act, when construed as above, accomplishes the very object intended by the section.

Having disposed of the constitutional objections we come now to the question of construction from another angle. Are the requirements that the voter make and subscribe to the affidavit, and that the ballot have the names of all the judges on the back thereof, mandatory or merely directory, and does failure of compliance in these respects vitiate the ballot? In construing statutory provisions the object and purpose which induce their enactment and the mischief they are intended to prevent must be given effect (Spitler v. Young, 63 Mo. 42), as must also the results and consequences of a proposed interpretation. [Glaser v. Rothschild, 221 Mo. l. c. 210.]

Counsel for appellant urge that the doctrine announced in Bowers v. Smith, 111 Mo. 45; Hehl v. Guion, 155 Mo. 76; and Gass v. Evans, 244 Mo. 329, that the omission of the initials of the judges from the ballot, under the general election laws, does not invalidate the ballot, should be applied to these requirements. We again approve the conclusion reached in those cases, as well as the reasons which induced it; but do they apply here? As with statutes, so with decisions, their underlying reasons must not be overlooked. The conclusion in those

Straughan v. Meyers.

cases is based chiefly upon the propositions: (1) That when the legal voter has performed his own duty, and his ballot has been received and finally deposited in the box, and his name entered in the poll books, this being done in his presence, he is justified in doing nothing more, and that his rights should not be defeated through the remissness and dereliction of the election officers. (2) That the object in requiring the initials on the ballot "was not to guard against the *counting of an illegal ballot,* but......to guard against fraud *while the election was in progress."* In the leading one of these cases (Hehl v. Guion, supra) the court announces that this requirement is addressed to the election judges, and says to them: Examine the ballot to see if it is properly endorsed, and if not, do not deposit it; do not mislead the voter, but give him another ballot that is properly marked, and while he is present, and let him cast it. This, officer, is your duty, and the opportunity for its performance is readily at hand. If you do not accept the opportunity and do not do your duty when the voter has done his, your conduct shall not defeat his rights.

It must also be remembered that, under the general election laws, the regular election officers are residents of the immediate community in which those entitled to vote also reside, and have more or less knowledge of the qualifications of the voters, as have also the local challengers and others having the right to be present and participate.

Let us now consider the requirements and character of the act under review. In the first place, it was enacted to provide the means and machinery through which a certain class of citizens might enjoy a privilege which, under the general laws, could not be exercised. Its beneficiaries are of one class and specially favored, and they vote under conditions al-

together different to others. The act itself declares (Sec. 1) that they can avail themselves thereof only upon the *conditions* and under the *regulations* specified. As early as Smith v. Haworth, 53 Mo. l. c. 89, this court said:

"It is a very salutary rule, long sanctioned by reason, experience and authority, that special laws, that give origin to new and unexpected departures from general rules, should be closely scrutinized, and the powers therein conferred strictly construed."

When we turn to the act we find that a stranger to the election officers and residents is authorized to present himself for the purpose of securing something which under the general laws only a resident is entitled to, and something which is carefully guarded by the law, namely: a ballot of a certain form. The act provides that before he is so entitled he, himself, shall perform certain duties. It prescribes that he, not the election officers, shall make and subscribe to an affidavit, in which he recites the conditions which entitle him to a ballot. When he has performed this duty he is then, and not before, entitled to receive a ballot of a specified kind, to-wit, one bearing the names of all the election judges. With this ballot the election judges from whom he receives same have nothing whatever to do in the way of finally accepting or rejecting same. They perform merely the ministerial duty of preserving and forwarding same to the authorized election officers. When this ballot is received at the place of the voter's residence and by the election officers who are authorized to act thereon, they have no opportunity to give him another or different ballot, as has the election officer under the general election laws. In fact, the election officers from whom he receives his ballot are but his agents for the purpose of enabling him to get his ballot to the proper election officers.

268 Mo.—38

For the purpose of his ballot the authorized election officers are the members of the county court or board of election commissioners at the place of his residence, and when his ballot reaches them they have neither power nor opportunity to do anything towards meeting the requirements created by the act and enjoined upon him and his agents. This being a special privilege conferred upon such person, and being available only under certain conditions, it seems to us that until these conditions are complied with the privilege cannot be exercised and that the voter has not performed his full duty until they have been met. Special privileges usually enjoin additional duties, and so it is with this act.

Again, when the ballot of the absent voter is received and counted, it is not done by the local resident election officers, who generally know the qualifications of the voters, but by officers whose opportunity to so know is not equally available. For these reasons it is not strange that the Legislature would purposely provide regulations and safeguards different to those under the general election laws and where the conditions are different.

It has been urged against this act that it is vicious and dangerous, because capable of being made an instrument of fraud, and, therefore, a means of defeating the public will. In the absence of proper safeguards we can conceive of such consequences, but when the provisions of the act are strictly complied with we think they afford a fairly sufficient shield against this. These safeguards should, however, not be destroyed by construction, but should be carefully preserved, in order to give life, force and beneficent effect to the act. The affidavit of the voter and the names of the judges where the ballot is procured are essential to guard against fraud and to properly identify the ballot and voter, as well as to

warrant the county court or election board in acting thereon.  Unlike the requirement of the general election law that the ballot contain the initials, the object of these requirements is to guard against the procuring and *counting of illegal ballots,* rather than against fraud while the election is actually in progress.  It is our opinion that before a voter can avail himself of this special privilege it is incumbent upon him to see that these provisions are complied with, and that failing to so do his ballot should not be counted.  These provisions relating to the duties of the authorized election officers after the receipt of a properly prepared ballot should be construed as were the provisions of the general election laws in the cases heretofore cited.

In the instant case the trial court rejected the ballots of sixteen absent voters without regard to their regularity or irregularity, basing his action upon the alleged invalidity of the act.  Of the sixteen thus rejected, thirteen were deducted from the total vote of the contestee, and three from the total vote of contestant.  Of the thirteen deducted from contestee the record discloses that eight were cast at Commerce, Scott County, Missouri, and that no affidavit was made or subscribed to at that time, and that the ballots did not have the names of all the judges endorsed thereon.  Sometime after the date of the election, and before the ballots had been forwarded, one of the persons who had acted as an election judge at that precinct, went to the county where these parties were employed and there undertook to take their affidavit.  This was after the day of the election and at a time when his functions as a judge had terminated.

Another of the votes deducted from contestee's total was that of E. F. Owen, who did not subscribe to the affidavit, and with whose ballot no affidavit

was transmitted; also the vote of one L. W. Donze, with whose ballot appears an affidavit, but which discloses that it was made in a county different to the one in which the ballot was cast; also the vote of J. J. Shafer, whose ballot did not have indorsed thereon the names of all the judges, and with whose ballot was a purported affidavit to which said Shafer had not subscribed.

The votes of the absent voters M. H. Harmon and A. E. Lottes, whose ballots are in regular and proper form, and with which were transmitted sufficient affidavits, were also deducted.

From the total vote of contestant the court deducted three votes of absent voters. Of these one was cast at Commerce under the same conditions and with the same irregularity as the eight heretofore mentioned as having been deducted from the total of contestee; also the vote of C. B. Rickard, whose ballot did not have indorsed thereon the names of all the judges; also the vote of Lon Graves, whose ballot and affidavit are in regular form and free of irregularity.

In our opinion the court should have deducted from contestee's total vote eleven, instead of thirteen, votes; and from contestant's total two, instead of three, these being the votes of absent voters whose ballots wholly failed to conform to the requirements, which we hold to be mandatory.

In addition to the above-mentioned changes in the official returns the court found that the election judges wrongfully rejected and refused to count for contestant two votes which had been cast for him, and which should have been counted; also that they received and counted for contestee eight votes which were irregular and not entitled to be counted, because the persons casting same were disqualified as electors, either because of non-residence or non-age.

The court further found that nine votes should be deducted from the total vote of contestant, because the persons casting same were likewise disqualified as electors on account of non-residence and non-age.

Besides the persons whose votes the court found to be illegal on account of disqualification, both the contestant and contestee challenge in their pleadings the votes of numerous other electors, but these grounds were rejected because of failure of proof.

The record in this case is necessarily somewhat lengthy, and it would serve no useful purpose, and would unduly lengthen the opinion, to enter into a discussion of the court's findings relative to the qualifications or disqualifications of the various challenged voters. It is sufficient to say that we have carefully gone through the entire record and are entirely satisfied with the findings and conclusion of the trial court on these questions. The trial court reduced its findings to writing, and we have had the benefit thereof, and it is due this learned judge to say that his findings in these respects are, in our opinion entirely correct and disclose such fairness that same cannot be challenged. In fact, we find but little complaint from either party relative thereto.

By deducting the thirteen votes of absent voters from contestee's total, and three of such votes from contestant's total; and by adding to and subtracting from the remaining vote the number which the court found should be deducted from each party on account of disqualifications of certain persons who voted, the result as found by the trial court was as follows: Contestant, 1111 votes; Contestee, 1109 votes. Making the calculations according to the views herein expressed, the result is: 1112 votes for contestant; 1111 votes for contestee; leaving contestant a majority of one vote.

598    SUPREME COURT OF MISSOURI,

State ex rel. v. Board of Curators of University of Missouri.

From this it follows that the judgment of the lower court that the contestant was legally elected at said election to the office of presiding judge of the county court of Ste. Genevieve County, Missouri, should be, and the same is, affirmed. *Blair, Walker* and *Graves, JJ.,* concur; *Bond, J.,* concurs in result; *Faris, J.,* dissents; *Woodson, C. J.,* absent.