In the Matter of the Application of FRANK J. BAKER and Others.

Supreme Court, Oneida County, November 30, 1925.

Elections — absentee votes — proceedings to eliminate certain absentee ballots — court has jurisdiction under Election Law, § 330 — fact that no void or challenged vote was shown on statement of canvass does not deprive court of jurisdiction — affidavits by alleged absentee voters do not comply with Election Law, §§ 117, 118 — notice of applications by absentee voters was not given to county committee as required by Election Law, § 118, subd. 4 — board of elections did not have jurisdiction to deliver votes to alleged absentees — challenge not required — all votes rejected — absentee vote statute strictly construed.

The Supreme Court has jurisdiction, under section 330 of the Election Law, to determine whether certain absentee votes, fully identified, challenged and returned, are legal.

The fact that no void or challenged votes are shown on the statement of the canvass does not deprive the court of jurisdiction, for it appears that voting was done by a machine and that the blank statement did not provide a designated space for the statement of challenged absentee voters, and that challenge sheets were not supplied and that a member of the board of elections wrote in a so-called identification book the names of the absentee voters and challenged them, and this list was later returned by him to the board of elections and may, if necessary, be ordered filed as of the time when the statement or return of canvass of votes was filed.

None of the affidavits in support of applications for absentee ballots complied with sections 117 and 118 of the Election Law, and furthermore, the board of elections did not, as required by subdivision 4 of section 118, give to the chairman of the county committee of each party a complete list of all the

applicants to whom absentee voters' ballots were delivered, and, therefore, the affidavits did not confer jurisdiction upon the board of elections to deliver to the applicants absentee ballots and the absentees did not have the right to vote on ballots actually delivered.

It was unnecessary, under the circumstances, since the ballots were void, to challenge the votes, for the whole proceeding was without authority of law.

The absentee vote statute is in derogation of the General Election Law and should be strictly construed.

PROCEEDING under section 330 of the Election Law to eliminate from the count certain alleged illegal and void absentee ballots.

*Leo O. Coupe, Henry D. Williams, Howard Sexton, Mason F. Sexton* and *Jacob Tumposky*, for the petitioners.

*Nicholas G. Powers, M. William Bray, Clarence E. Williams* and *Gay H. Brown*, for the respondents.

DEVENDORF, J. This is a proceeding on the part of the petitioners to eliminate from the count of the votes cast in the first district of the first ward of the city of Utica at the recent election certain alleged illegal and void absentee ballots. The respondents challenge the power of the court in this proceeding to determine the questions presented and to change the result as announced by the board of elections of said district. It is further alleged by the respondents that these questions can only be decided in an action in the nature of quo warranto to test the title to the office in issue.

The objections were overruled and all legal proofs with reference to these votes spread on the record. I think there is power in the court under section 330 of the Election Law (as amd. by Laws of 1924, chap. 405) to determine whether these votes, fully identified, challenged and returned are legal.

If there were doubt, in view of the facts disclosed, the benefit of it should be given in favor of the honest result as announced by the voting machine rather than in favor of the challenged absentee votes.

At the close of the polls on election day the voting machine figures gave Marino, the petitioner, two hundred and four votes for the office of alderman, and one hundred and eighty-nine for Fiore, the respondent. The board of inspectors then took up the count of eighteen absentee votes. These were, with one or two exceptions, straight Democratic votes and all of them were for Fiore, the Democratic candidate for alderman, and the applications for sixteen of them were sworn to before him as notary. They were counted in the return and gave him a majority of three. These votes were challenged as appears by the evidence of the witnesses Martorella, Jones, Russell and others.

No challenge sheets had been provided and probably under the conditions existing there, confronted by this unusual and unexpected

absentee vote, the challengers did as well in raising the questions as could reasonably have been expected.

Much was said upon the hearing as to the constitutional right of the American citizen to vote and have the secrecy of his ballot protected. The difficulty in that respect is that no box or receptacle for the absentee ballots was supplied and the inspectors opened each envelope, spread out the ballot, counted and then replaced it in the envelope. The stub was not removed and the inspectors and bystanders on election night at the count knew exactly how each absentee voted and it would appear extremely ridiculous that this investigation must come to a stop because this record might disclose how some one of these absentee voters, or all of them, if you choose, voted.

That there was fraud, forgery and perjury, together with a wholesale violation of the election laws, is disclosed by the uncontradicted evidence. The court has no difficulty whatever in finding the truth of the petitioner's allegation in that regard. That there was a premeditated and well-designed plan to cast a large illegal absentee vote in this district is apparent.

As stated, early in the controversy the power of the court to reject these votes was questioned, whatever their infirmity, because there were no void or challenged votes shown upon the statement of the canvass.

The blank statement for the return, the vote being by machine, did not provide a designated space for such statement, neither were challenge sheets supplied. In lieu of that a member of the board wrote down in a so-called identification book the names of these absentee voters and challenged them. This list was later returned by him to the board of elections and if need be an order may be entered directing the board of elections to file that as of the time when the statement or return of the canvass of the votes was filed.

The Election Law provides in effect that a qualified voter desiring to vote as an absentee voter may mail or deliver to the board of elections, so that it shall be received by the board not earlier than the thirtieth and not later than the seventeenth day before the general election, his affidavit subscribed by him, stating his name and residence address, including the street number, if any, or otherwise a brief description thereof; that he is a qualified voter of the election district in which he resides; that he expects in good faith to be unavoidably absent from the State or county of his residence on the day of the next general election because his duties, occupation or business require him to be elsewhere within the United States on such day, giving a brief description of the duties, occupation or business which requires such absence; also,

in the case of absence on account of duties, occupation or business, the special circumstances by which such absence is required, unless such duties, occupation or business are of a nature to require ordinarily absence from the State or county or require ordinarily traveling beyond the boundaries of the State or county. The affidavit shall also state that the affiant applies in good faith for an absentee voter's ballot or set of ballots, as the case may be. (Election Law, § 117, as amd. by Laws of 1925, chap. 509.) Upon the receipt of such affidavit the board of elections shall determine upon such inquiry as it deems proper whether the applicant is a voter legally qualified to vote at such election, and shall determine whether the duties, occupation or business of the applicant, as set forth in his affidavit, are of a nature ordinarily to require absence from the State or county or ordinarily to require traveling beyond the boundaries of the State or county, and shall determine whether the special circumstances, as set forth in the affidavit, are sufficient. If the board shall find that the applicant is a qualified voter of the election district and that his affidavit is sufficient, it shall, as soon as practicable thereafter deliver to him, at the office of the board, or if he shall have so requested to a member of his family, or if he shall have so requested shall mail to him at an address in the United States designated by him, an absentee voter's ballot or set of ballots, and an envelope therefor. (Election Law, § 118, subds. 1, 3, as amd. by Laws of 1924, chap. 446.) The board shall keep a record of the applications, as they are received, for absentee voters' ballots, showing the names and residences of the applicants, and, as soon as practicable, shall give to the chairman of the county committee of each party a complete list of all the applicants to whom absentee voters' ballots have been delivered. (Election Law, § 118, subd. 4.)

In this case the board of elections did not give notice to the chairman of the county committee of either party.

Not one of the affidavits in question complied with the requirements of the statute. To illustrate: The affidavit of West said he would be out of town on election day; Wagoner said he would be out of the county as a railroad worker; Bosquet that he would be out of the county on business; Rice that he would be out of the county on business with the railroad company; McCormick says he is a traveling salesman, does not say he will be absent; Steppello that he will be out of town on election day; Santras that he will be out of town on election day; Smoke says he might be out of the county for election day on business as salesman; Birmingham and Wakely say they will be out of town as salesmen, and Fischer says he will be away on business as salesman; Randolph says he is

employed by the Pullman Company and his arrival at Utica November third will be too late to vote. The other six say they will be out of the county on business as salesmen. Nearly all of these absentee voters were in Utica on election day and some of them about this polling place in the first ward.

These affidavits are defective and of no force or effect. They did not give the board of elections jurisdiction or the right to deliver to the applicant an absentee ballot. Neither did it give to the voter the right to vote such absentee ballot. A challenge to such vote was not necessary. The whole proceeding leading to it was without authority of law.

This absentee vote statute is in derogation of the General Election Law and should be strictly construed. Its provisions should be rigidly adhered to, otherwise the repeater, floater and non-resident are given a free hand to gain results satisfactory to themselves. There are no presumptions or inferences in its favor. The voter wishing to cast an absentee vote must comply with all the statutory demands and the power of the board of elections is held within those lines. It cannot determine a fact judicially in favor of an applicant for an absentee ballot without proof. It cannot pass out absentee ballots at the mere asking. This would make fraud and vote buying too easy.

I am of the opinion that all of these eighteen absentee votes were illegal and void because there was no legal right or power conferred on the board of elections by the applicant's affidavit to deliver to him such ballots.

These men whose votes are rejected have no cause for complaint. They attempted, for purposes best known to themselves, to vote an absentee ballot and if they have failed in that respect it is their own fault. If they were legal residents of any ward, like others, they could have voted there and when they attempt to avoid daylight methods they must take the consequences if their scheme fails because of non-compliance on their part with the statutory requirements.

The votes alleged to have been cast by West, Fischer, Rice, Clay, Santras, Wakely, Shea, McCormick, Connelly and others could be rejected on other grounds than above stated. Involved in them is non-residence, impersonation, forgery, perjury, marked ballots and underhand work.

Having concluded to reject all of the eighteen absentee votes for the reason given it is unnecessary to specifically point out additional illegality in each individual case.

An order will enter herein accordingly and the proper proceedings follow for a recanvass.