ALFRED WICHELMANN v. CITY OF GLENCOE.
HERBERT H. HOAR AND OTHERS, INTERVENERS.[1]

May 21, 1937.

No. 31,313.

[1]Reported in 273 N. W. 638.

*Herbert H. Hoar*, for interveners-appellants.

*G. P. Smith*, for contestant-respondent.

*W. W. Merrill*, for contestee-respondent.

PETERSON, JUSTICE.

At a special election in the city of Glencoe on July 28, 1936, there were submitted the questions: Shall the city construct a light and power plant, and shall the city issue $75,000 in bonds for the purpose of constructing the plant? The contestant-respondent and contestee-respondent contend that a mere majority vote in favor of the propositions is sufficient, and the interveners contend that a 60 per cent vote in favor thereof is required. The court below held that 26 absentee voters' ballots, of which 7 were cast in favor of and 19 against, the propositions, were procured, cast, and returned in violation of the so-called absent voters law (1 Mason Minn. St. 1927, §§ 496 to 508-1; 3 Mason Minn. St. 1934 Supp. *id.*), and that said ballots were void, unlawful, and of no effect. The 26 ballots were rejected. It is conceded that if the rejecting of the absentee voters' ballots is correct the propositions submitted to the voters were carried and adopted, as the court below held.

The findings of fact with respect to these 26 ballots, amply sustained by the evidence and hence final here, are that none of the absentee voters casting said ballots made and filed verified applications for the ballots with the city clerk prior to the election, as required by law; that a blank application for each of said ballots was delivered to each of the voters with the ballot and returned by the voter with his ballot to the judges of election; that applications for 15 of said ballots were in fact executed subsequent to the de-

livery of the ballots by the city clerk; that four of said applications were not verified as required by law, and that ten of said ballots were not marked, sealed, and mailed as required by said law in that as to said ballots the cancellation stamp of the postal officer was not affixed to the certificate in conformity with the statute. Further, the court found that many of the ballots, applications, return envelopes, "and required contents" were delivered by the city clerk to a partisan in said election, who in turn distributed the same to the absentee voters, who returned them in the manner stated. None of the applications of the 26 absentee voters were received or filed by the city clerk until returned to him by the judges of election after said election had been held. There is also a finding that some of the ballots were delivered to and deposited in the post office by a third person, not a voter, contrary to law.

The absent voters law, as far as here pertinent, provides that any person entitled to vote in an election, who is absent from the election district, or is unable to go to the polling place by reason of illness or physical disability, "may vote therein by having his ballot delivered by mail to the election judges of such district on the day of such general election [the statute by its terms applies to the election in question], *by complying with the provisions of this act*," [Italics supplied.] § 496. The statute further provides that a voter "may make application in writing subscribed by him" to the city clerk for the ballots and envelopes; and that he shall subscribe and swear to the oath printed on the back of the application as required by law "at the time of making such application," § 497; that the city clerk "shall file" the application, § 499, and deliver the same to the judges of election in which the absent voters' ballots are to be cast, § 502; that "the applicant for such ballots shall pay" to the city clerk, at the time he makes such application, a fee of twenty cents, § 500; that if the application by the voter is made more than 15 days before the election the city clerk "shall mail to the applicant at the address specified in the application," the ballots, envelopes, and other matters specified, and if the application is made within 15 days of the election, "he shall forthwith upon receipt of such application, mail or deliver to the applicant,

if he apply therefor in person," the ballots, envelopes, and other matters, § 499; that the city clerk "shall mail or deliver to the applicant" with the ballots, two envelopes and a voter's certificate, § 501, one of the envelopes being a ballot envelope in which to place the ballot after it has been marked, and the other a return envelope on which the address of the election judges is to be written by the city clerk and in which the ballot envelope is to be inclosed with the voter's certificate, and the certificate of an attesting witness as to the compliance with the statute by the voter in marking and mailing by the voter personally, pursuant to the instructions set forth in detail in the statute, § 501. The judges of election are to receive such ballots delivered to them by the United States mail, § 504. It is provided in the last mentioned section that if the ballots are not received for the reason that the voter has failed to comply with the requirements set forth in prior sections of the statute, the ballot envelope shall be marked "rejected" and placed in the return envelope with the voter's certificate and placed with and returned to the city clerk, with the unused ballots.

The purpose of an election is to ascertain the will of the electorate. In order to secure a full and complete expression of the popular will, it is necessary not only that all voters who are qualified be permitted to vote, but also that only those who are entitled to vote be permitted to do so, and that a proper count and return be made. Laws relating to the registration of voters, secrecy of the ballot, and counting and returning the results of elections are designed to give the fullest expression to the will of the electorate at the polls and at the same time prevent illegal voting, frauds, and dishonesty in elections which frequently have defeated the will of the voters. The general election law provides that voting shall be by ballot in person in the regular polling places in the election districts. The absent voters law provides a way for voting by mail in cases in which the voters are absent from the district or are physically unable to go to the polls in person. The lawmaking power, being fully cognizant of the possibilities of illegal voting, frauds, and dishonesty in elections, prescribed many safeguards in the absent voters law to prevent such abuses. While the purpose

of the statute is to extend the privilege of voting, its provisions clearly indicate an intention not to let down the bars necessary for honest elections. Absentee voting is an exception to the general rule and is in the nature of a special right or privilege which enables the absentee voter to exercise his right to vote in a manner not enjoyed by voters generally. By the terms of the statute it is purely optional with the absentee voters whether they shall exercise the rights and privileges conferred upon them. If an elector decides to exercise the privilege of absentee voting, he can register and vote, by the terms of the law, only "by complying with the provisions" thereof. § 496. And the act intends that the judges of election shall not receive his ballot if there is noncompliance therewith. § 504. The statute prescribes a condition precedent to absentee voting by requiring the making of an affidavit, returned to the city clerk, and the subscribing and swearing to the oath required by § 497. The verified application contains statements of facts showing the applicant's qualifications as a voter and his right to a ballot. The application is required to be filed and the ballots are to be delivered to the voter direct by mail or in person by the clerk. The obligation to comply with these provisions is in mandatory language and is imposed upon the voters. It is not necessary now to decide whether all of the provisions of the absent voters law are mandatory, and, if any are not, which ones are directory. If the absent voters statute is mandatory in providing that a verified application for his ballot is to be made and filed with the city clerk by the absentee voter before the election, compliance therewith is a condition precedent to absentee voting. This is the only question which we need consider; and, if the statute is so construed, the failure of the 26 absentee voters to comply with the statute, by making and filing verified applications with the city clerk before the ballots were issued and delivered to them, is determinative of this case.

The provisions of election laws requiring acts to be done and imposing obligations upon the elector which are personal to him are mandatory. He is personally at fault if he violates them. If his vote is rejected for such violations, it is because of his own

fault, not that of election officials. Such provisions prescribe mandatory conditions precedent to the right of voting. 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 2915; Pennington v. Hare, 60 Minn. 146, 150, 62 N. W. 116; Truelsen v. Hugo, 81 Minn. 73, 83 N. W. 500; State ex rel. O'Hearn v. Erickson, 152 Minn. 349, 351, 188 N. W. 736. This principle has been applied to cases in which. a voter has had another mark his ballot without having taken an oath that he could not read English or that he was physically unable to mark his ballot. The statute requiring an oath as to disability makes the taking of the oath a condition precedent to having the ballot marked by another. Being a condition precedent, it is the duty of the voter to comply therewith, and hence the provisions of the statute are mandatory. Failure to comply is grounds for rejecting the ballot. State ex rel. Braley v. Gay, 59 Minn. 6, 60 N. W. 676, 50 A. S. R. 389; Nelson v. Bullard, 155 Minn. 419, 194 N. W. 308; State ex rel. Pine v. Board of Education, 158 Minn. 459, 197 N. W. 964; In re Election Contest Itasca County, 178 Minn. 578, 228 N. W. 155; Sweno v. Gutches, 191 Minn. 24, 252 N. W. 839.

The absent voters law imposes upon the voter as a condition precedent to the right of voting the making and filing of the verified application for a ballot. This provision of the statute is mandatory. Straughan v. Meyers, 268 Mo. 580, 187 S. W. 1159; In re Baker, 126 Misc. 49, 213 N. Y. S. 524, affirmed, 215 App. Div. 791, 213 N. Y. S. 228; Davis v. Board of Education, 186 N. C. 227, 119 S. E. 372; Bullington v. Grabow, 88 Colo. 561, 298 P. 1059; Talbott v. Thompson, 350 Ill. 86, 182 N. E. 784; Werber v. Hughes, 196 Ind. 542, 148 N. E. 149; State ex rel. Hutchins v. Tucker, 106 Fla. 905, 143 So. 754. See Scheible v. Borough of Hightstown, 93 N. J. L. 69, 106 A. 25; notes, 14 A. L. R. 1256; 35 A. L. R. 819.

The interveners contend that no fraud has been shown and that the absentee voters are in fact legal voters of the district and therefore entitled to vote. If the statute were directory, the argument would be of some force, but it has no application here because the statute is mandatory. They cite Pratley v. State ex rel. Campbell, 17 Wyo. 371, 99 P. 1116, and Goodell v. Judith Basin County, 70

Mont. 222, 224 P. 1110. We have examined the cited cases and find that they arise under statutes which differ substantially from ours, and the cases are therefore not in point.

If ballots can be passed out for distribution without the making and filing of a verified application by the electors, the bars have been let down altogether. Frauds and corrupt elections are bound to result. It opens the door to frauds and abuses which all election laws seek to suppress and prevent. In In re Baker, 126 Misc. 49, 53, the court says:

"This absentee vote statute is in derogation of the general election law and should be strictly construed. Its provisions should be rigidly adhered to, otherwise the repeater, floater and non-resident are given a free hand to gain results satisfactory to themselves. * * * The voter wishing to cast an absentee vote must comply with all the statutory demands and the power of the board of elections is held within those lines. * * * It cannot pass out absentee ballots at the mere asking. This would make fraud and vote buying too easy."

Similar expressions are found in other cases. The obligation is on the voter to comply with the requirements of the law that apply to him personally. In holding the statute mandatory in this respect, we simply hold the voter to the requirements which the law prescribes. If he fails to perform duties required of him, he does so at his peril. It is necessary that the statute be held mandatory in the respects mentioned in order to preserve the purity of the ballot and the integrity of elections. The 26 absent voters' ballots were properly rejected.

It is not necessary to consider the other questions presented. Affirmed.