STATE EX REL. VAN HORN, RELATOR, *v.* LYON, RESPONDENT.

No. 8705

Submitted October 22, 1946. Decided October 28, 1946.

173 Pac. (2d) 891

Mr. D. W. Doyle, of Conrad, for appellant.

Mr. W. M. Black, of Shelby, for respondent.

MR. JUSTICE ADAIR delivered the opinion of the court.

Original proceeding commenced October 16, 1946, in this court, for injunction to restrain the defendant as clerk of Toole county, from delivering to the judges of election in the various voting precincts of Toole county, 183 absent voters' ballots, all mailed or delivered by the county clerk to be voted more than thirty days prior to the general election to be held in Montana on Tuesday, November 5, 1946.

In response to an order to show cause, the defendant interposed a general demurrer and upon the questions arising out of the facts so admitted, the cause was submitted.

The admitted facts are: From August 10, 1946, to and including October 3, 1946, some 183 applicants for absent voters' ballots were filed in the office of the defendant county clerk. None of such applicants were in the military forces of the United States, hence Chapter 143, Laws of 1945, has no application herein. Each ballot was mailed or delivered on the date the application was received by the defendant clerk except seven which were delivered to electors in Shelby Precinct No. 3, the applications therefor having been received by defendant between the 4th and 6th day of September, 1946.

Seventy-two ballots were delivered by the clerk to one Joe Jansen, who was actively engaged in procuring electors to apply for absent voters' ballots. The applications therefor requested that the clerk deliver the official ballots to Jansen. Seventy-one of the applications for the ballots delivered by the clerk to Jansen were sworn to before Jansen as a notary public. Numerous applications for ballots procured by Jansen were not delivered to the county clerk's office for varying

periods of time ranging from a few days to as much as three weeks after the date of the affidavit thereon.

This proceeding questions the authority of the county clerk to mail or deliver any official ballots to any one at any time more remote than thirty days immediately preceding the election as well as to mail or deliver official ballots to any one other than to the qualified elector making application therefor.

The Constitution provides: "All elections by the people ▮ shall be by ballot." Constitution of Montana, Art. IX, sec. 1. The term "voting by ballot" means secret voting as distinguished from open voting—the privilege of secrecy being of the essence of voting by ballot. Smith & Son v. MacAuley, 109 Vt. 326, 196 A. 281. The delivery of official ballots to persons other than the electors voting would let down the bars intended to guarantee the privilege of secrecy in voting. Sartwelle v. Dunn, Tex. Civ. App., 120 S. W. (2d) 130.

The Constitution prescribes certain qualifications to entitle one to vote, providing in part: "First, he shall be a citizen of the United States; second, he shall have resided in this state one year immediately preceding the election at which he offers to vote, and in the town, county or precinct such time as may be prescribed by law." Const. of Montana, Art. IX, sec. 2.

Section 540, Revised Codes, requires that the elector "must have resided in the state one year and in the county *thirty days* immediately preceding the election at which he offers to vote." (Emphasis ours.)

The elector must register and the county clerk is required to "close all registration for the full period of forty-five days prior to and before any election." Sec. 566, Rev. Codes.

The general election law provides that voting shall be by the duly qualified registered elector in person on the day of the election at the designated polling place in the county of his residence.

The Constitution (Art. IX, sec. 9) expressly empowers the legislative assembly to pass such "laws as may be necessary

to secure the purity of elections and guard against abuses of the elective franchise."

The manner prescribed by law for voting in person on election day and the manner prescribed for voting an absent voter's ballot involve quite separate, distinct and different methods and procedure.

The manner of voting by an elector who, on election day, presents himself in person at the polling place in his precinct, is provided for in the general election law set forth in Chapter 68 of the Political Code, while the manner of voting an absent voter's ballot is specifically provided for in Chapter 69 of the Political Code, as amended by Chapter 234, Laws of 1943.

The law requires of an elector seeking to vote an absent voter's ballot that he must first make written application to the county clerk for an official ballot. Such application shall be in the form prescribed by law. It shall be made on a blank to be furnished by the county clerk. It must be subscribed and sworn to by the applicant. It must set forth the certificate of acknowledgment of the officer before whom it was sworn. Secs. 716, 717, Rev. Codes. The voter making such application shall forward the application by mail or he shall deliver it in person to the county clerk of the county in which he is registered. Sec. 718, Rev. Codes. The county clerk must thereupon look up the applicant's registration card, compare the signature thereon with the signature on the application for absent voter's ballot and, if convinced that the same person signed both the registration card and the application, then and not till then shall the county clerk accept the application in good faith and deliver the ballot to the elector applying for same. Sec. 718, Rev. Codes.

The law prescribes, in no uncertain terms, the time limit within which the elector "may make application to the county clerk * * * for an official ballot" by fixing such limit "At any time within thirty (30) days next preceding such election" at which the ballot is to be voted. Sec. 716.

The law further provides that the application blank shall be

*sent, by mail,* to any elector of the county upon request therefor. Sec. 719. The law also provides that the application blank shall be *delivered* to any elector upon request therefor made personally at the office of the county clerk. Sec. 719. Thus, whether the elector applies *by mail* or whether he applies *in person* at the clerk's office the law requires that he first make written application for an official ballot, as a condition precedent to his right to receive and to the clerk's authority to deliver the ballot requested.

Section 726, Revised Codes, as amended by Chapter 234, Laws of 1943, permits the voting of an absent voter's ballot by an elector who is neither absent from the county nor physically incapacitated but who, being present in the county after the official ballots have been printed, has reason to believe (1) that he will be absent from the county on election day or (2) who has reason to believe that as a result of physical incapacity, in all probability he will be unable to attend his voting precinct poll as made to appear by the certificate of a physician, as provided in section 716, Revised Codes. It is also expressly provided that the elector accorded the privilege of voting under section 726 before he leaves his county or before the inception of his physical incapacity, may vote *"in like manner* as an absent [or physically incapacitated] voter" for whom provision is made in section 716 et seq., and section 726, as amended, further expressly provides that "the provisions of this act [being Chapter 69 of the Political Code as amended by Chapter 234, Laws of 1943] shall be deemed to apply to such voting" which means that the provisions of each and all the various sections of Chapter 69, supra, including sections 716 to 719, both inclusive, apply to the persons permitted to vote an absent voter's ballot under section 726.

The absent voters law containing twenty-one separate sections was first enacted as Chapter 110, Laws of 1915, which was supplanted by Chapter 155, Laws of 1917, containing twenty-three sections, now being Chapter 69 of the Political Code of 1935, as amended by Chapter 234, Laws of 1943. This

law provides a new and different manner of voting than had theretofore been known in this state by granting to the qualified registered elector coming within its provisions and complying with its requirements the high privilege of procuring and marking his official ballot in advance of the day of holding the election and at a place other than before the election judges in the elector's regular voting precinct.

Absentee voting is therefore an exception to the customary and usual manner of voting. It is a privilege granted by the lawmakers which enables the absentee elector, the physically incapacitated elector, and the elector who has reason to believe that before election day he will be absent from his county or physically incapacitated to obtain and mark his ballot in a different manner and at a different time and place than is required of electors generally who present themselves in person at their respective precinct polling places on the day of election.

For these reasons the laws conferring and regulating the ▇ privilege of absentee voting have generally received a strict construction. 29 C. J. S., Elections, sec. 210, p. 297. The absent voters law is in derogation of the common law and of the general election law. It merely confers a privilege and not an absolute right. In re Baker, 126 Misc. 49, 213 N. Y. S. 524, affirmed in 215 App. Div. 791, 213 N. Y. S. 228; Wichelmann v. City of Glencoe, 200 Minn. 62, 273 N. W. 638; Sartwelle v. Dunn, supra; State ex rel. Whitley v. Rinehart, 140 Fla. 645, 192 So. 819; Guice v. McGehee, 155 Miss. 858, 124 So. 643, 125 So. 433; Bullington v. Grabow, 88 Colo. 561, 298 Pac. 1059; Jolly v. Deeds, 135 Ohio St. 369, 21 N E.. (2d) 108; Torkelson v. Byrne, 68 N. D. 13, 276 N. W. 134, 113 A. L. R. 1213; Straughan v. Meyers, 268 Mo. 580, 187 S. W. 1159; Werber v. Hughes, 196 Ind. 542, 148 N. E. 149; Annotations 14 A. L. R. 1256, 35 A. L. R. 819, 121 A. L. R. 939, 132 A. L. R. 374.

It is optional with the elector whether or not he shall take advantage of the opportunity afforded him by the absent voters law. If an elector desires to exercise the privilege of absentee voting he must comply with the provisions of the law

which accords him that privilege. The absent voters law provides the exact manner of exercising the privilege. Those provisions and regulations constitute conditions precedent with which the elector must comply to enable him to enjoy the privilege.

Section 716, Revised Codes, as amended by Chapter 234, Laws of 1943, provides that any voter expecting to be absent from his county on the day of election or who, as a result of physical incapacity, in all probability will be unable to attend his voting precinct poll on election day, "At any time *within thirty (30) days next preceding such election* * * * may make application to the county clerk of such county, * * * for an official ballot or official ballots to be voted at such election as an absent [or physically incapacitated] voter's ballot or ballots." (Emphasis ours.)

The limitation "At any time within thirty (30) days next preceding such election" prescribed by section 716 means exactly what it says. As applied to the case before us it means "at any time within thirty (30) days next preceding" Tuesday, November 5, 1946, that such electors as are entitled by law to vote an absent voter's ballot "may make application to the county clerk * * * for an official ballot." The words "At any time within thirty (30) days next preceding such election" may not be construed to mean simply "At any time." The legislature has seen fit to qualify "at any time" by the words "within thirty (30) days next preceding such election," and in construing the statute the court must give effect to such qualification. In other words, the court may not omit or delete from the statute the words "within thirty (30) days next preceding such election." The absent voters law further limits the time of voting thereunder by providing that "no elector shall be entitled to receive such ballot on election day, nor unless his application is made to or received by the county * * * clerk before the delivery of the official ballots to the judge of election." Sec. 719. "In the construction of a statute * * * the office of the judge is simply to ascertain and declare

what is in terms or substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." Sec. 10519, Rev. Codes.

In Talbott v. Thompson, 350 Ill. 86, 182 N. E. 784, the statute provided that application for an absent voter's ballot, if made by mail, shall be presented at least five days, and, if in person, at least three days prior to the election. The court held that under such statute the county clerk had no authority to mail or deliver a ballot on an application made the day immediately preceding the day of election and that such ballot was illegal and could not be counted.

In holding the absent voters law mandatory in this respect, the court merely holds the elector to the requirements which the law prescribes.

In re Baker, supra, 126 Misc. 49, 213 N. Y. S. 524, at page 528, the court said: "This absentee vote statute is in derogation of the general Election Law and should be strictly construed. Its provisions should be rigidly adhered to; otherwise the repeater floater, and nonresident are given a free hand to gain results satisfactory to themselves. * * * The voter, wishing to cast an absentee vote, must comply with all the statutory demands, and the power of the board of elections is held within those lines. * * * It cannot pass out absentee ballots at the mere asking. This would make fraud and vote buying too easy."

In Goodell v. Judith Basin County, 70 Mont. 222, 240, 224 Pac. 1110, 1116, this court adopted the rule announced in Jones v. State ex rel. Wilson, 153 Ind. 440, 451, 55 N. E. 229, namely: "All provisions of the election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but, after election, all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless the provisions

affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an eletcion, or that its omission shall render it void."

It is quite apparent that each and every elector who seeks ▮ the privilege granted by our absent voters law must, as a condition precedent, make written application for an official ballot to the county clerk; that the law permits the elector to make such application to the county clerk "at any time within thirty (30) days next preceding such election" at which the ballot is to be cast; that no application for an official ballot can have any legal force or effect before thirty days next preceding the election; that at any and all times prior to thirty days next preceding the election there is no authority in law for the clerk to either send by mail or deliver in person to any elector not in the military service or to permit the voting by any such elector of any official ballot; that there is no authority in law for the mailing or delivery to any one other than to a duly qualified and registered elector making proper written application therefor, any official ballot to be voted under or pursuant to the provisions of the absent voters law. Sartwelle v. Dunn, supra.

In this direct proceeding brought prior to the election for ▮ the purpose of enforcing the above provisions of the election law, such provisions and requirements are mandatory. Goodell v. Judith Basin County, supra.

None of the 183 official ballots involved in this proceeding ▮ was sent by mail or delivered by the defendant county clerk "within thirty (30) days next preceding" (sec. 716) the general election to be held on Tuesday, November 5, 1946. All of such official ballots were sent or delivered by the county clerk without any authority of law and are illegal and may not be counted. However, because honest mistakes of public officials, in the performance of their duties, should not, as a general rule, be permitted to disfranchise duly qualified electors, we are of the opinion that in the instant case the county

clerk, now acting within the thirty day limit before election, should send by mail or deliver to the electors concerned, new absent voters' ballots.

The writ is granted.

Mr. Justice Morris (specially concurring).

I concur in the opinion by Mr. Justice Adair but am not in accord with much that is said therein and particularly in the following respects.

The ballots that were taken out by Joe Jansen should be declared absolutely void so far as the right to be voted on November 5th is concerned. In regard to the ballots mailed or delivered to electors on applications filed prior to October 5th, including those delivered to Jansen, they should not be received nor counted by the election judges but the applications for such ballots which no doubt are still on file with the county clerk should, in my judgment, be accepted as amply suffiicent to justify the county clerk in forwarding new ballots to the several electors named in the several applications. In other words, the ballot is the thing that the law undertakes to protect and not the application for the ballot. Any applications for ballots that were received by the county clerk and recorder on a date prior to October 5th should have been held by the clerk and recorder in abeyance and the ballots applied for thereunder sent out some time on or subsequent to October 5th.

Mr. Chief Justice Lindquist (specially concurring).

I concur in the opinion of Mr. Justice Adair, and the applications having no legal force or effect before 30 days next preceding the election, I believe that the applications should have been held in abeyance by the county clerk until October 5, 1946.

Mr. Justice Angstman (specially concurring).

I agree with the opinion of Mr. Justice Morris and with much that is said in the opinion of Mr. Justice Adair, if we consider all the questions therein discussed. I believe, however, that this Court should not consider the validity of more than 72 ballots—those delivered to Joe Jansen.

As to the others, the relator withdrew his attack by filing an amended complaint confining his attack to the 72 ballots. I therefore believe that this Court should consider the case as made by the amended complaint only and allow relator to withdraw his attack upon the other ballots, and as pointed out in the opinion of Mr. Justice Adair, they would be considered valid after the election, since so far as this case is concerned their validity would not have been questioned before the election.

Mr. Justice Cheadle.

I join with Mr. Justice Angstman in the above concurring opinion.