WILLIAM J. SHEILS, Plaintiff, *v.* EDWARD J. FLYNN, as Secretary of State, and ERNEST F. EILERT and Another, as and Constituting the Board of Elections of the County of Westchester, Defendants, and WILLIAM CRONIN, as Chairman of the Democratic County Committee of Westchester County, and CHARLES H. GRIFFITHS, as Chairman of the Republican County Committee of Westchester County, Intervenors.*

Supreme Court, Additional Trial Term, Albany County, September 22, 1937.

* Affd., 252 App. Div. 238; 275 N. Y. 446.

304

*Julius Weiss, Timothy A. McCarthy* and *William J. O'Shea, Jr.,* for the plaintiff.

*John J. Bennett, Jr., Attorney-General [Isaac Ringel, Assistant Attorney-General,* of counsel], for the defendant Edward J. Flynn.

*William A. Davidson [Frank J. Claydon* of counsel], for the defendant Board of Elections of the County of Westchester.

*Walter W. Westall [Alfred M. Bailey* of counsel], for the intervenor Charles H. Griffiths, as chairman, etc.

*Walter G. C. Otto [Edward K. Kennedy* of counsel], for the intervenor William Cronin, as chairman, etc.

BERGAN, J. In the general election of 1936 the plaintiff William J. Sheils opposed George A. Slater for the office of surrogate of Westchester county. The return of the board of canvassers disclosed that Slater had received 123,785 votes and Shiels 123,687 votes, giving Slater a plurality of 98. It was established in this action from an actual examination of the voting machines and absentee ballots by the parties, however, that the actual plurality of Slater over Sheils was 106. The closeness of the division of the voters on this office is indicated by the fact that almost 250,000 votes were cast. The plaintiff received 291 more votes cast by voting machines than Slater, and Slater received 397 more votes cast by absentee ballots than Sheils, which constituted the Slater plurality of 106.

The certificate of election having in due course issued to Slater, he entered into the office of surrogate on January 1, 1937, but died on February twenty-third. On the assumption that the death of the incumbent created a vacancy, the Governor appointed the plaintiff to the office of surrogate. The plaintiff accepted the appointment and now occupies the office. In this action the plaintiff seeks, by declaratory judgment, a determination that he was duly elected at the general election and is entitled to the office for a full term of six years commencing January 1, 1937. The

form of the action and the sufficiency of the complaint have heretofore been sustained by the Special Term (163 Misc. 506) and by the Appellate Division, Third Department (252 App. Div. 140).

At the outset a problem of proof is presented. As in quo warranto, it is urged on behalf of the plaintiff, proof may be taken of facts which go behind the canvass of election officials, and of official returns or certificates, and a conclusion reached in this privately instituted action, upon the actual choice of voters legally entitled to participate, as distinguished from the recorded result and which may disregard the preliminary determinations of election officials upon the qualifications of voters. The People of the State here challenge no usurper or intruder into a public office in the form of action long sanctioned by our practice in which this kind of proof has been available. As far as I am able to ascertain, proof in the scope offered has never been allowed in a privately instituted action. Long ago, it was said, that only when the People of the State, in the exercise of their sovereignty, require the occupant of a public office to show his title to it, may proof of the actual choice of legally qualified voters be received in evidence to bring about a result differing from the official canvass. (*People v. Cook*, 8 N. Y. 67, 82).

Assuming, as I must, from the order of the Special Term and its affirmance, that this action may privately be maintained for a judgment by declaration in advance of adverse occupation, proof in support of the allegations of the complaint would be adequate only if admitted in the scope heretofore allowed in quo warranto, unlimited by the constraint of record title to the office, or of vacancy arising from such title, or of the canvass or returns of election officials. I have accordingly upon the trial adopted the procedure and allowed the proof adducible in an action by the People against one who usurps public office.

There is no proof of fraud in the election and no real issue of fact.

A blanket objection is made by the attorneys for the plaintiff to all of the absentee ballots, which, if sustained, will result in the elimination of such ballots from consideration and a determination made of the result in favor of the plaintiff solely from the votes cast by voting machines.

It is claimed, first of all, that a separate ballot should have been furnished for presidential electors; a separate ballot for general officers and a separate ballot for questions submitted, in accordance with section 119 of the Election Law, read in connection with

section 104. These three subjects appearing together in one printed absentee ballot, it is claimed that all the votes thus cast for the office of surrogate must fall.

The statute provides, however, in respect to absentee ballots, that such separate ballots for presidential electors and questions submitted shall " be * * * in the same form as the ballot * * * to be voted by other voters." It is conceded that all other voters in Westchester used voting machines and the single absentee ballot prepared for and used by absentee voters was substantially a *facsimile* of the arrangement of presidential electors, general officers and questions submitted as they appeared upon the voting machines. The statute may be read as implying that the three kinds of ballots referred to should each be printed separately, but it may also be read as implying that the means of separation and the form and arrangement used upon the face of the voting machines be followed in preparing absentee ballots in a county where all other voting is by machine.

If it be construed as requiring physically separated ballots, it has not become apparent in what manner the plaintiff has been prejudiced. He was treated exactly the same as his opponent and all other candidates for general offices in the county. A means to correct the form of ballot, if the form be deemed not in compliance with the statute, was available to him prior to the election. (Election Law, § 330, subd. 3.) He undertook no such proceeding and made no complaint then, although he was at liberty to inspect the form of ballot. This objection should not now be sustained.

It is further contended by plaintiff's attorneys that the omission of a parenthesis from the oath which every absentee voter must take and which appears on the envelope in which the ballot is delivered to the board of elections, is of sufficient consequence to invalidate all of the absentee ballots. The oath was printed. Its text followed the words of the statute. The pertinent part as stated in the section follows: " that I will be unavoidably absent from the State or county of my residence because of duties, occupation or business which require me to be elsewhere in the United States on the day of election; (or, ' because I am and on the day of election will be an inmate of a soldiers' and sailors' home; ' if such is the case) that I have not qualified nor do I intend to vote elsewhere than as set forth on the reverse side of this envelope." (Election Law, § 120.)

Omitted from the statutory text in the printed form appearing on the envelope sent to the absentee voters in Westchester were the parentheses and quotation marks. The omission of the concluding parenthesis tends to connect the words " if such is the

case," which are separated from the preceding matter by a semi-colon, with the matter immediately following: " that I have not qualified nor do I intend to vote elsewhere," etc.

Plaintiff's counsel urge that this, as printed, is susceptible of a construction that the affiant swears that only if he is an inmate of a soldiers' or sailors' home he has not qualified nor does he intend to vote elsewhere than as set forth in the envelope. The statement with reference to occupation, duties or business is separated from the statement as to soldiers' or sailors' home by the word " or." Since both refer to unavoidable absence, the words " if such is the case " as printed on the Westchester envelopes either relate to both reasons for absence, or should be deemed, parenthetically, to relate to the words immediately preceding, which is plainly the intent of the statute. In either event, the facts intended to be disclosed by the affidavit are not substantially distorted

Moreover, the omission of the parenthesis appears to be a printer's error and the error of the board of elections in not precisely conforming the text with that provided by the statute. It would be a harsh result, indeed, if every voter who used this printed form of oath furnished him by election officials would, upon so narrow technical grounds, be deprived of his right to vote. This applies with equal force to the objections to the form of the ballot provided.

In considering errors of election officials, somewhat similar in character to those now under consideration, the Court of Appeals in *People ex rel. Hirsh* v. *Wood* (148 N. Y. 142) said (at p. 146): " We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake, or even the willful misconduct of election officers in performing the duty cast upon them." (See, also, *Matter of Lauer* v. *Board of Elections*, 262 N. Y. 416, 419; *People* v. *Cook*, 8 id. 67; *Matter of Merow*, 112 App. Div. 562; *People ex rel. Williams* v. *Board of Canvassers*, 105 id. 197; *Salducco* v. *Etkin*, 155 Misc. 361; affd., 268 N. Y. 606.) The decision of *People ex rel. Nichols* v. *Board of Canvassers* (129 N. Y. 395), which was one of a group of cases decided by the Court of Appeals arising from the senatorial elections in 1891, and resting upon the specific grounds there discussed, is not an authority sustaining the position of plaintiff as to these errors or irregularities.

Except for these objections, which include all of the absentee ballots, the main contention of the plaintiff is that a great many applicants for such ballots, although otherwise fully qualified to vote, did not bring themselves within the categories provided by the constitutional or statutory rules which sanction and control

absentee voting. The failure to establish the right to adopt this mode of voting is said to appear from the applications filed by the voters, and it is the theory of the plaintiff that the ballots of such applicants, in so far as they can be identified as cast for either candidate, are unlawful votes, and must be deducted from the total of the vote for such candidate as canvassed. Except in a few instances, where the voter has actually testified for whom he voted, proof of the identity of the ballot with the challenged application rests upon a mathematical formula.

The ultimate claim of the plaintiff is that by this theory, 345 votes must be deducted from the total of Slater and 101 from the total of Sheils, giving the plaintiff a net gain of 244 to offset the 106 plurality of Slater. The process would convert the Slater plurality into a plurality of 138 for Sheils.

The privilege of exercising the elective franchise by qualified voters while absent from the county or State flows from the Constitution. (State Const. art. 2, § 1-a.) The Legislature is authorized to provide the manner, time and place at which such voters "who may, on the occurrence of any general election, be unavoidably absent from the State or county of their residence because * * * their duties, occupation or business require them to be elsewhere within the United States, may vote."

In pursuance of the constitutional authorization the Legislature has provided the manner, time and place for absentee voting by sections 117 *et seq.* of the Election Law. The qualified voter must appear personally before the board of inspectors of his election district, or before the board of central registration. There he must make and verify an affidavit before such board, "subscribed by him." The affidavit must state his name and residence, must state that he is a qualified voter of the election district of his residence, and if he voted at the preceding general election, where he so voted, and that he applies in good faith for an absentee voter's ballot. It must state that he expects, in good faith, to be unavoidably absent from the State or county at the next election, because (in so far as material in this case) his duties, occupation or business require him to be elsewhere in the United States on election day. He must give a brief description of the duties, occupation or business which require his absence.

If such duties, occupation or business are such that ordinarily require absence from the State or county, or even traveling beyond their boundaries, the affidavit may stop there. If the duties, occupation or business are not of such a character, the special circumstances by which such absence is required must be stated.

The circumstances so stated must relate. to the duties, occupation or business of the applicant. These applications are retained by the board of inspectors or the central board of registry and delivered by them to the board of elections.

An applicant who is in the Federal service, or a student matriculated in an institution of learning outside the county of his residence, or a superintendent or teacher of such an institution, is not required personally to appear before his dist ict board of registry or the central registration board for the purpose of making and verifying the application. Such an application may be verified before any officer authorized to administer an oath and may be mailed or otherwise delivered to the board of election by the applicant himself. These regulations are all contained in section 117 of the Election Law.

The most important objection addressed to the sufficiency of the applications for absentee ballots is upon the ground that the special circumstances of absence stated are insufficient. This group is large enough numerically, if the objections are sustained, under the plaintiff's theory that the ballots cast by such applicant be deemed unlawful votes, to change the result of the election.

It has been seen that where the duties, occupation or business are not of a character usually to connote absence, the applicant is required to give the " special circumstances " which in his case are expected to require absence on election day.

Plaintiff's counsel point out, as one instance of insufficiency which is quite typical, that when an applicant gives his name and residence in his application; swears that he is a qualified and registered voter of a given election district; states the place where he voted at the last general election; says that " I expect to be unavoidably absent from the County of Westchester, State of New York, from my residence on the day of the next general election, November 3, 1936, by reason of my duties, occupation or business, requiring me to be elsewhere within the United States on such day; " states that " I apply in good faith for an absentee voter's ballot; " gives his business as industrial engineering and states the special circumstances showing his right to such ballot that he is " going to California on business," that this is insufficient. (See ward 4, district 12, Yonkers.) If the ballot cast by such a voter can be identified, it must, under plaintiff's theory, be deducted from the candidate for whom it was cast. The basis for the objection is that the mere statement of a business trip to California fails to state a fact indicating either unavoidable absence or actual requirements of business creating the necessity for the absence.

Every fact from which necessity of the requirement of absence may be derived must be stated, plaintiff contends, or the ballot cast by the voter must be disregarded.

With this highly technical theory as an effectual means of changing the result of an election, I cannot find myself in agreement. The statement of a business trip to California is a fair statement of special circumstances within the statute. It is the common and usual way of expressing such a fact. In effect, the voter having already said that he expects not to be home election day, is being asked the reason, since usually his business would not require absence. In the vernacular of common usage he would say " because of my business," or " I must make a business trip," or some similar answer, or just " business." It seems inconceivable that the statute could be construed as requiring the voter to state in a public record the details of just what particular transaction takes him away from home, whom he is to see, or precisely what business he is to discuss.

The statement made by the voter ought to be construed liberally and in the voter's favor. When great numbers of people fill out applications requiring a statement of " special circumstances " requiring absence from home, it must be expected that there will be as many variations of circumstances given as there will be variations of nomenclature employed to describe them. Some special circumstances will be stated tersely and some stated verbosely, and the board of elections and this court are required to grant a liberal and fair construction to the words employed in aid of the beneficial purposes of the statute, and to avoid seeking to find in these words of laymen the niceties of distinction or the technical perfection of legal draftsmen.

Plaintiff's counsel contend very earnestly, as an additional and perhaps more important ground, that the special circumstances stated must be full enough to give facts sufficient to disclose whether the basic constitutional test — " unavoidable absence "— is shown by the voter, and that, if the words given as special circumstances are not full enough to show that the absence is of this character, this fundamental test has not been met.

The Constitution itself and the legislative enactment carrying it into effect seem both to point in a different direction. The question as to whether the absence is unavoidable is to be resolved solely, I think, from the words of the voter outlined by section 117 of the Election Law, and used in every affidavit in this case: " that I expect to be unavoidably absent from the county of Westchester, State of New York, from my residence " on election day.

What absence will be " unavoidable " is a subject that cannot be determined by any general rule, nor can it adequately be determined from any individual statement of fact. Endless controversy would arise over any statement of fact attempting to describe it. To a court or a board of elections a given statement might very reasonably appear not to disclose an absence that would truly be unavoidable. To the voter who made it, it might state as fully as it lay within his capacity to express himself, the unavoidable character of the absence. One group of persons, examining the statement, might agree with the voter; another group might quite reasonably disagree with him. When the absence is associated with duties, occupation or business, its unavoidable character becomes a matter of infinite speculation and could lend itself to endless discussion.

To one college student, the unwillingness to cut a class and bring about a scholastic demerit might be regarded as justification for a statement of unavoidable absence because of duties, while to another only great catastrophe, personal danger or unsurmountable physical barriers would be deemed an adequate test for an absence that would be truly unavoidable. To one man, the loss of a day's salary might render absence unavoidable; to another the loss of many thousands of dollars would fall short of constituting a true reason for unavoidable absence. So it would run in occupation and business *ad infinitum.*

The judges or the election officers who pass upon the applications are themselves as susceptible to the variations of viewpoint, perspective and values as the applicant. As a matter of practical necessity the nature of the absence must be left to the voter to determine and to say, whether to him, in good faith, it is unavoidable.

The draftsmen of the constitutional provision seem to have recognized this in avoiding the use of the words " will be " and using the words " may be " unavoidably absent. The word " may " thus used is suggestive of possibility or contingency, and hence its use in the Constitution negatives absolutism in reference to the future happening or event. A statement of such a possible or contingent absence can best, and perhaps only, be expressed by the conclusion of the applicant, since the possibility as well as the certainty both fall within the scope of the permission of the Constitution.

The Legislature, carrying into effect the constitutional permission to provide for absentee voting, seems thus to have construed its power. In providing for the contents of the application, the statute says (§ 117) that the affidavit shall state, not

the precise fact which renders absence unavoidab'e, but that the voter " expects in good faith to be unavoidably absent from the State or county of his residence." This expression of expected absence seems to be the full legislative test for unavoidability. This is more forcefully demonstrated by the fact that where the occupation is one which usually requires absence, and no special circumstances are required to be stated, the conclusion of the applicant that he expects in good faith to be unavoidably absent is all that is required. Usual absence or traveling is quite a different thing from unavoidable absence at a specific time. Yet it is conceded by plaintiff's counsel that a commercial traveler (one of the classes of occupation deemed by the statute to be itinerant) need merely give his occupation, state a conclusion in the language of the statute that he expects in good faith to be unavoidably absent, and this will be a sufficient statement upon that subject. This falls far short of showing a fact to indicate the certainty or even reasonable probability of absence on a specific day, and indeed, rests solely upon the naked conclusion of the applicant. No other construction of the constitutional and statutory tests seems possible than that this conclusion given in good faith is a sufficient statement of the unavoidable nature of the expected absence for all classes of applicants.

Under the authorization of the Constitution to fix the manner for absentee voting, the Legislature has delegated the duty of inquiry and of determination of the merits of applications and their conformity with requirements of law to the board of elections of the several counties. (Election Law, § 118.) The scope of the inquiry and determination by the board of elections is fixed, but no precise standard, either of the kind of duty, occupation or business which usually require absence from the county (except by way of illustration in the statute) or the nature of the special circumstances which in other kinds of duty, occupation or business are sufficient to require absence, are fixed by the statute.

In exercising the power of inquiry and determination, the board of elections must first decide whether the applicant is " a voter legally qualified to vote in the election district stated in his application." (Election Law, § 118, subd. 1.) The inquiry of the board upon this subject is not limited to a mere inspection of the application. The determination shall be made " upon such inquiry as it [the board of elections] deems proper." It may fully and independently investigate the facts and is expressly authorized by this section to employ the power of subpœna and examination under oath given to it by section 38 of the Election Law.

The board is further required to determine whether the duties, occupation or business stated by the applicant "are of a nature ordinarily to require absence from the State or county or ordinarily to require traveling beyond the boundaries of the State or county." (§ 118, subd. 2.) If the board determines they are not of such a nature, it is required to determine whether the special circumstances stated in the affidavit "are sufficient."

If the board determines that the affidavit is sufficient, it shall deliver or mail to the applicant his absentee ballot. No form of determination is required, nor is the board required to distinguish by any statement or finding between a determination based upon the nature of the duties, occupation or business requiring absence, and a determination based upon the special circumstances stated. A determination favorable to the applicant is indicated by the delivery of the ballot, and it must be assumed when such delivery has been made, either that the board concluded the duties, business or occupation alone justified voting by absentee ballot, or that the special circumstances stated were sufficient. Upon both of these subjects, the scope of inquiry by the board into the facts is limited, by express language of the statute, to an inspection of the application itself.

When an applicant sets forth in his affidavit the nature of his duty, occupation or business, he presents to the board of elections a statement of fact. The board has jurisdiction to determine from this fact whether such duty, occupation or business is of a nature which will ordinarily require absence from or traveling beyond the State or county. In reaching this determination it acts judicially, and, while the reasonableness of its determination is subject to direct review, it may not be attacked collaterally.

The principle is well settled. Where the act of an election official "involves the exercise of judgment or discretion in determining whether the duty exists, the act is judicial." (POUND, Ch. J., in *Matter of Wicksel* v. *Cohen*, 262 N. Y. 446, 449.) Power vested in a subordinate body to determine a question of fact is deemed a judicial power. (*Howland* v. *Eldridge*, 43 N. Y. 457, 461: *People ex rel. Francis* v. *Common Council*, 78 id. 33, 39.) The remedy for erroneous determination of such a character is first that provided by statute, and when that is exhausted, by certiorari. (*People ex rel. Uvalde A. P. Co.* v. *Seaman*, 217 N. Y. 70, 76.) A collateral attack upon such a determination will not be entertained. (*Swift* v. *Poughkeepsie*, 37 N. Y. 511; *Buffalo & State L. R. R. Co.* v. *Supervisors*, 48 id. 93; *Mayor of New York* v. *Davenport*, 92 id. 604; *United States Trust Co.* v. *Mayor*, 144 id. 488; *Stanley* v. *Jay St. Connecting R. R.*, 182 App. Div. 399.

The court may in a collateral action disagree with he conclusion reached upon the usual absentee or itinerant nature of the occupation or business, but it must accept that conclusion as valid. Since there is no means of determining whether the board reached its conclusion from the statement of the nature of the duties, occupation or business, or from the statement of the special circumstances, and since it is authorized to act upon either ground, its favorable determination must be deemed to have been reached upon that ground which sustains its jurisdiction to act. Indeed the board is not required to examine into the special circumstances stated at all unless it resolves the first subject of inquiry unfavorably to the applicant. If it resolves the first subject of inquiry favorably to the applicant, the statement of special circumstances becomes surplusage.

Accordingly, where the fact of duty, occupation or business is given by the applicant, the board of elections of Westchester county must be deemed to have passed judicially upon the application, and the reasonableness of the determination may be treated only in a direct review of the action of the board.

It follows that neither in an action in quo warranto, nor in this action for a declaratory judgment affecting the title to public office, can an absentee vote cast for a candidate be deemed an illegal vote as long as it is supported by a determination by the board of elections acting within its jurisdiction on facts presented to such board, that the voter came within the constitutional and statutory classifications of persons entitled to vote in this manner. While in an action to determine the title to public office the court may disregard the ministerial acts of election officials, may count legal votes and eliminate illegal ones, and freely set aside the unlawful ministerial acts of election boards and canvassers, the court has never in such an action, so far as I can ascertain, as a basis for a judgment changing the result of an election, disregarded a previously unchallenged preliminary determination of fact which a subordinate board or officer was vested by law with jurisdiction to decide. It is the fact that election officers usually act ministerially, and are limited in the scope of their determination of most questions that come before them, that has justified the court in quo warranto in looking beyond the returns and the certificate and determining the right to the office. (*People* v. *Cook, supra*, pp. 81, 83.)

Some applications have been received in evidence which appear to be insufficient to vest the board of elections with any jurisdiction to issue absentee ballots to the applicants. Into this classification fall those applications in which no duty, occupation

or business is stated; from which it appears the application was verified before a notary public by that class of voter who must personally appear and verify the application before the board of inspectors or central board of registry, or where it was verified too late by a voter not required to verify before the board; where it was verified before a member of the board at a time when the board was not in session; where the affidavit was not subscribed; where the application on its face showed the voter would be outside the United States on election day; and where he showed he would be within the county on election day. The total of these that may be attributed to Slater under plaintiff's theory of identity, however, does not change the result.

Some of the applications challenged upon the ground of improper verification (not before an election board) are those of students or teachers. All of those must be treated as validly executed applications. Where, from the application viewed in its entirety, the conclusion may be reached that the applicant is a student matriculated in an institution of learning or a teacher therein, the determination of the board should be upheld. The precise repetition of the words of the statute " matriculated in an institution of learning " is not the sole index of the power of the board to find the applicant to be in that class. The reasonable exercise of that power to determine, the procedure before the board being not precisely fixed by law, must be liberally construed. A statement by the applicant, too, that he is a student and will be " away to school," read together with the formal statements contained in the affidavit, is a sufficient statement of special circumstances.

Where the verification is before a notary public who is also an inspector of elections on a day that the board was in session, it is a reasonable assumption that the application was, within the scope of the statute, verified before the board, and the erroneous title stated by the officer taking the oath is a mere irregularity. An oath taken by a notary public in the presence of the board of inspectors is also a substantial compliance with the statute. In those instances in the sixth election district in the town of Mamaroneck and in the fiftieth district, sixth ward of White Plains, in which the dates of the verification on the applications are given as days the boards were not in session, it appears without dispute from testimony and a concession in the record that they were actually taken before the boards on registration days. In those cases in which the qualification of the voter to cast the ballot in the district is challenged upon the basis of statements appearing in the application as to residence in the State, county or district or failure to state such, or an indicated change in residence, the board of

elections must be presumed to have satisfied itself that the applicant was legally qualified to vote at the election by the inquiry and investigation extrinsic to the application authorized by subdivision 1 of section 118 of the Election Law. No adequate proof of untimely mailing or delivery of the ballots has been offered. (§ 117.) Plaintiff has the burden of establishing either that the application was delivered too late other than by mail, or that it was mailed too late. In neither instance has this burden been met.

If it be assumed, in those instances where common experience would indicate that duty, occupation or business would not usually require absence from the county or State, or traveling beyond their boundaries, the board of elections reached a determination favorable to the applicant upon the basis of the special circumstances stated, I think a different result cannot be reached. The board is vested with the power to determine if the special circumstances are sufficient. In this determination, again, it acts judicially. Where sufficient facts are stated the determination cannot be disturbed collaterally. The board being limited to an examination of the application, if no fact is stated, it is without jurisdiction to determine the sufficiency of the special circumstances. In such a case, the failure to state any special circumstances would clearly negative the power of the board to determine the application favorably to the voter on the basis of special circumstances. The words " out of town," " out of county," or " traveling " are not statements of fact upon which the board could determine any special circumstances in connection with which the duty, occupation or business existed. Into the same category fall " urgent," " necessary," " unavoidable," as statements of special circumstances. The votes, the applications for which bear these and a few other similar statements, wherever the votes are identified, can be deducted from the candidate for whom the votes were cast. Combined with the others which can be deducted under the specific categories last discussed, they fall far short of affecting the result.

Moreover, the qualified voter who applied for an absentee ballot dealt with the authority designated by law to pass upon the sufficiency of his application. Upon the receipt of his ballot, he was justified in assuming that the statements made by him were deemed sufficient by such public officials to authorize the use of an absentee ballot. As the minimum requirement of justice to him, the voter should be entitled to some notice that the statements made or reasons given by him were insufficient.

No such notice was ever given, nor was the right to challenge the vote, before the result was known, and thereafter to examine

the qualification to vote by absentee ballot, including a review of the application, ever sought, although expressly authorized by law. (Election Law, § 210, subd. 2, and § 330, subd. 4.) Now, many months after the filing of the applications and favorable action upon them, and when the result of the election is known, the applications are challenged for the first time. If these contentions be sustained, the outcome of a close election in this State could not be quickly known, finality to the contest would long be postponed and the result never at rest. (*People ex rel. Brink* v. *Way,* 179 N. Y. 174, 183.)

I cannot share the apprehension of counsel for the plaintiff that, if their contentions are not upheld, the Absentee Voting Law will become the vehicle of fraud and abuse in elections. The abuse of the privilege, either by making a materially false statement in the application, or by voting as an absentee not being qualified as such, is a felony (Penal Law, § 765, subds. 7, 8), which abuse prosecuting officials may readily terminate. The applications which go to bipartisan boards of elections require more precise information under oath and in a more inescapable form than is required of the voter present on election day, and the vote is fully subject to challenge at the election. Hence the privilege is not readily adapted to fraud. The voting itself involves details in making the application, in filling out blanks on the envelope, in appearing and swearing before a notary and in delivery of the ballot, within fixed periods, troublesome enough to discourage this method of voting as a mere matter of convenience. Indeed, only a voter determined to exercise the right of elective franchise at the cost of some little trouble would undertake to vote in this manner. The record contains no proof whatever that any one of approximately 800 voters whose applications are in evidence used the privilege either for fraud or mere convenience.

The complaint is dismissed upon the merits, without costs. Submit decision and judgment.