Henry A. Hudson, J.
This is an application by four separate applicants for absentee ballots pursuant to subdivision 7 of section 330 of the Election Law for an order directing the Jefferson County Board of Elections to deliver absentee ballots, which the said board has refused to petitioners upon the ground that the applications are insufficient, pursuant to section 117 of the Election Law, to justify the issuance of an absentee ballot.
The proceeding was brought on by order to show cause and upon the return thereof the petitioners and members of the Board of Elections appeared by counsel. It was conceded by the Board of Elections that all four of the applicants were duly qualified voters of the City of Watertown, Jefferson County, New York, and that the application for absentee ballot in each instance had not been refused for that reason. It was urged, however, that each of the applicants requested the issuance of absentee ballots for reasons which required the setting forth upon the application blank provided by the Board of Elections of special circumstances as provided under paragraph b of subdivision 3 of section 117 of the Election Law and that in the instance of each of the four applicants, such special circumstances involved reasons of health. The position of the Jefferson County, Board of Elections was stated to be that the unavoidable absence of a voter from Jefferson County on November 6, 1956 for reasons of health was not sufficient to satisfy the requirements of section 117 of the Election Law, as being the duties, occupation or business of the applicant, it being the contention of the Board of Elections that the word “ duties ” as contained in the statute was synonymous with ‘ ‘ occupation ” or “ business ’ ’ and that all three of those restrictive words used in the statute were in effect synonymous. It was conceded that the Board of Elections of Jefferson County has denied some 50 applications of which the 4 who are parties to this proceeding, represent 4 distinct general classifications. All of the applications are identical in general content with the exception of the answer to Question 2, subdivision (h), which is the paragraph provided on the application blank for the recitation of the special circumstances for the absence of the applicant.
*76 The application of Gerald W. Austin contains the following statement: ‘ ‘ Special circumstances require that I be at Tucson, Ariz. for the following reason: Am required to be in a warm dry climate in Doctors orders”. Attached to the application is a doctor’s certificate which states:
‘ ‘ To Whom It May Concern:
This is to certify that for reasons of health Mr. Gerald Austin, transfers his winter residence to Tucson, Arizona.
(Signed) Irwin K. Stone, M. D.”
The application of May T. Coolidge recites: “ Special circumstances require that I be at 803 4th Ave. N. St. Petersburg, Fla. for the following reason: Allergic to Frost & winter conditions which cause asthma & cardiac condition — advised by Physician, Dr. Jas. A. McCullough Blk River N. Y. to spend winter in warm climate.”
Attached to this application is a doctor’s certificate reading as follows :
“ Re: May T. Coolidge, 270 Mullin Street, Watertown, N". Y. To Whom It May Concern:
For the past several years, I have recommended that the above captioned make her residence in Florida, as a measure, in the care and treatment of a cardiac condition.
Respectfully submitted,
James A. McCullough (Signed)
James A. McCullough, M. D.”
The application of Jessie R. Miller contains the statement: “ Special circumstances require that I be at St. Petersburg, Fla. for the following reason: necessary that I live in a warmer climate because of arthritis.”
The application of Adda B. Williams recites: “ Special circumstances require that I be at Pasadena Calif — for the following reason: Health. ”
The right to vote by absentee ballot is provided for under section 2 of Article II of the State Constitution. Such section reads as follows: “ The legislature may, by general law, provide a manner in which, and the time and place at which, qualified voters who, on the occurrence of any election, may be unavoidably absent from the place of their residence because they are inmates of a soldiers’ and sailors’ home or of a United States veterans’ bureau hospital, or because their duties, occupation or business, or those of members of their families, require *77 them to be elsewhere * * * may vote and for the return and canvass of their votes.”
Under the authority of section 2 of article II, the Legislature enacted section 117 of the Election Law. Subdivision 1 of section 117 reads as follows: “ 1. A qualified voter, who, on the occurrence of any general election, may be unavoidably absent from his residence because he is an inmate of a veterans’ bureau hospital, or from the county of his residence because his duties, occupation or business require him to be elsewhere on the day of election, may vote as an absentee voter under this chapter. ’ ’ Subdivision 3 provides that when the duties, occupation or business of a qualified voter are of such a nature as ordinarily to require such absence, a brief description of such duties, occupation or business shall be set forth; that if such duties, occupation or business are not of a nature as ordinarily to require such absence, the affidavit shall contain a statement of the special circumstances on account of which such absence is required. The section thereafter specifies a number of particular employments which in and of themselves would entitle the qualified voter to the benefits of the section upon stating such facts in his affidavit. The section further provides similar privileges to the spouse, parent or child of a qualified voter entitled to an absentee ballot provided that they likewise expect to be absent from the county of their residence by reason of accompanying or being with the person entitled to such absentee ballot.'
Section 118 of the Election Law provides for the determination of the right of an applicant to an absentee ballot and for the delivery of such ballot by the Board of Elections. This section provides, first, that in the event that the board determines that a voter is not legally qualified to vote that it shall reject the application. The board is further given the right to make any inquiry it deems necessary pursuant to its statutory authority to determine whether the applicant is in fact a qualified voter. The board is next required to “ determine whether the duties, occupation or business, as set forth in the affidavit, are of a nature ordinarily to require absence from the county or ordinarily to require traveling beyond the boundaries of the county, and shall determine, if they are found not to be of such a nature, whether the spécial circumstances, as set forth in the affidavit, are sufficient.” The board is next authorized whenever it is not satisfied from an examination of an application, as provided in section 117 of the Election Law, that the applicant is entitled to such a ballot, to order an investigation through any officer or employee of the Board of Elections, police officer, *78 sheriff or deputy sheriff, or a special deputy attorney-general appointed pursuant to the Executive Law. The board is then required, if it shall determine that the applicant is not entitled to an absentee voter’s ballot, to notify the applicant and give him the reason for such rejection. Finally subdivision 11 of section 118 provides as follows: “ The board shall keep a record of applications for absentee voters’ ballots as they are received, showing the names and residences of the applicants, and, as soon as practicable, shall give to the chairman of each political party in the county a complete list of all applicants to whom absentee voters’ ballots have been delivered or mailed, containing their names and places of residence as they appear in the register or on the registration record, as the case may be, including the election district ”.
The notice given to each of the applicants was contained in a form letter which, after reciting the requirements of subdivisions 1 and 2 of section 117 of the Election Law, stated: “ Tour affidavit fails to state that you qualify under the requirements of Section 117 and therefore the Board of Elections is compelled to deny your application.” It was conceded by the Board of Elections that no further or other action was taken by them in the case of the above applications, to conduct any investigation as provided under subdivision 5 of section 118, or that it obtained from the applicant any further information upon which to base its determination to reject the application. It rather rested its action solely upon the insufficiency of the application blank itself and in this particular, the sufficiency of the execution of the affidavit constituting the application blank, and the qualifications of the applicant as a voter, were in no way questioned or disputed by the Board of Elections and its action in rejecting the application was not based in any way thereon.
Counsel concedes that there is no authority in this State directly in point with the question here to be decided. In the case of Matter of Baker (126 Misc. 49), which involved the validity of absentee ballots to which challenges had been made at the time they were canvassed by the election board, the court held that the absentee vote statute was in derogation of the Election Law and should be strictly construed. The decision was sustained upon other grounds (215 App. Div. 791) but the Appellate Division, commenting on the lower court’s interpretation of the law, stated (p. 792): “ We do not find it necessary to pass upon the other matters argued in the briefs; nor are we to be understood as approving the views in respect to the law stated in the opinion in the court below. None of these matters *79 would affect the result. We base our judgment solely on the grounds stated above.”
Sheils v. Flynn (164 Misc. 302, affd. 252 App. Div. 238, affd. 275 N. Y. 446) contains an excellent discussion of the questions here under consideration. In the Shells case the question of the validity of a number of absentee ballots was raised collaterally after the results of the election had become final and the successful candidates had taken office. The court held that the absentee ballots in question could not be challenged collaterally and that inasmuch as the absentee votes had not been challenged and that no action had been taken directly by the unsuccessful candidate to have them declared invalid that the action of the Board of Elections must be presumed to be correct and the absentee ballots presumed valid. The court, however, discussed the liberal manner in which the statute should be construed in the following language, at page 310: ‘ ‘ The statement made by the voter ought to be construed liberally and in the voter’s favor. * * * the board of elections and this court are required to grant a liberal and fair construction to the words employed in aid of the beneficial purposes of the statute, and to avoid seeking to find in these words of laymen the niceties of distinction or the technical perfection of legal draftsmen.”
The purpose of the statute itself (Election Law, § 117) is to carry out the direction of section 2 of article II of the State Constitution. The Constitution provides the authority for the right of a qualified voter to vote by absentee ballot. Section 117 of the Election Law merely provides the means by which and the time and place at which qualified voters may request an absentee ballot. I am of the opinion that section 117 should be interpreted liberally in favor of an applicant who is a recognized qualified voter and that it is unnecessary to construe section 117 strictly, as in derogation of the General Election Law.
In Sheils v. Flynn (supra) in discussing the objection that the statement in the application, “ going to California on business ” was not a sufficient statement of fact indicating either unavoidable absence or actual business requirements necessitating absence and that it was essential to state every fact so that the necessity of the absence might be established, the court stated, at page 310: ‘ ‘ With this highly technical theory as an effectual means of changing the result of an election, I cannot find myself in agreement. The statement of a business trip to California is a fair statement of special circumstances within the statute. It is the common and usual way of expressing such a fact. In effect, the voter having already said that he expects *80 not to be home election day, is being asked the reason, since usually his business would not require absence. In the vernacular of common usage he would say 1 because of my business ’, or ‘ I must make a business trip, ’ or some similar answer, or just ‘ business. ’ It seems inconceivable that the statute could be construed as requiring the voter to state in a public record the details of just what particular transaction takes him away from home, whom he is to see, or precisely what business he is to discuss.”
In considering the manner in which the layman should be required or expected to set forth the reasons which constitute in his opinion the special circumstances referred to in the statute, the court stated (p. 310): “ The statement made by the voter ought to be construed liberally and in the voter’s favor. When great numbers of people fill out applications requiring a statement of ‘ special circumstances ’ requiring absence from home, it must be expected that there will be as many variations of circumstances given as there will be variations of nomenclature employed to describe them. Some special circumstances will be stated tersely and some stated verbosely, and the board of elections and this court are required to grant a liberal and fair construction to the words employed in aid of beneficial purposes of the statute, and to avoid seeking to find in these words of laymen the niceties of distinction or the technical perfection of legal draftsmen.”
In connection with the contention that the special circumstances referred to in the statute must be stated in detail to disclose fully whether the voter’s absence would in fact be unavoidable, the court stated again at pages 310 and 311:
‘ ‘ The Constitution itself and the legislative enactment carrying it into effect seem both to point in a different direction. The question as to whether the absence is unavoidable is to be resolved solely, I think, from the words of the voter outlined by section 117 of the Election Law, and used in every affidavit in this case: ‘ that I expect to be unavoidably absent from the county of Westchester, State of New York, from my residence ’ on election day.
“ What absence will be ‘ unavoidable ’ is a subject that cannot be determined by any general rule, nor can it adequately be determined from any individual statement of fact. Endless controversy would arise over any statement of fact attempting to describe it. To a court or a board of elections a given statement might very reasonably appear not to disclose an absence that would truly be unavoidable. To the voter who made it, it might state as fully as it lay within his capacity to express him *81 self, the unavoidable character of the absence. One group of persons, examining the statement, might agree with the voter; another group might quite reasonably disagree with him. When the absence is associated with duties, occupation, or business, its unavoidable character becomes a matter of infinite speculation and could lend itself to endless discussion.”
A general discussion of the subject is also found in Abrahams on New York Election Law, published in 1950, at pages 58 to 63 inclusive, based upon the opinions in Sheils v. Flynn (supra) and Matter of Baker (supra).
In my opinion, the language of Justice Bergan in Sheils v. Flynn (supra) is very pertinent to the question here under consideration. It would seem that a person recognized by the Board of Elections as a duly qualified voter who properly executes the affidavit application and affirms that he expects in good faith to be unavoidably absent from Jefferson County because his duties, occupation or business require him to be elsewhere on such day, should be entitled to have his statement accepted as true by the Board of Elections unless there are some circumstances within the knowledge of the Board of Elections which would lead them to consider otherwise. In that event they are given authority under subdivision 5 of section 118 to cause the necessary investigation to be made to ascertain the truth thereof. If the voter states special circumstances in rather general language, such as “ because of my business ” or “I must make a business trip” or just “ business ” these words, in view of the sworn statement of the applicant, in the absence of knowledge of facts which might lead the Board of Elections to a different opinion, should be sufficient to qualify the voter for an absentee ballot. This is particularly true in view of the safeguards which are provided under section 118. In the first instance, subdivision 5 gives authority to the Board of Elections to cause a complete investigation to be made if they consider the application false or untrue or in fact for any reason that they may believe necessary. Subdivision 11 of section 118 further provides that a complete record of all absentee ballots must be kept and notification of the issuance of all such ballots must be given in writing to the chairman of the county committees of each political party in the county. Thus, protection against the voting of improper absentee ballots is provided. Any political party in the county may challenge an improper absentee ballot. This right of challenge; the slight likelihood of fraud and other abuses because of false statements in applications for absentee ballots; the logical effect of the considerable effort involved in securing and voting an absentee ballot are *82 well pointed out by Justice Bergan in Sheils v. Flynn (supra) at page 317, as follows: ‘ ‘ The applications which go to bipartisan boards of elections require more precise information under oath and in a more inescapable form than is required of the voter present on election day, and the vote is fully subject to challenge at the election. Hence the privilege is not readily adapted to fraud. The voting itself involves details in making the application, in filling out blanks on the envelope, in appearing and swearing before a notary and in delivery of the ballot, within fixed periods, troublesome enough to discourage this method of voting as a mere matter of convenience. Indeed, only a voter determined to exercise the right of elective franchise at the cost of some little trouble would undertake to vote in this manner.”
As I have previously pointed out, the right to vote by absentee ballot is not the creature of legislative enactment. It is a guaranty under our State Constitution.
The court can take judicial notice that the duty to exercise one’s right to vote is receiving more pronounced publicity every year. During the present election campaign, the presidential candidates of both major political parties have urged in nearly every public address that the voter exercise his right to vote regardless of which candidate he supports. Many nonpartisan organizations are publicly, through the press, radio and television, advocating the exercise by everyone of the elective franchise. The tendency today is to encourage voting by every qualified voter. Emphasis should, therefore, be given by a Board of Elections to a liberal interpretation of the meaning of the words, “ duties “ business “ occupation ” as used in the Constitution and section 117 of the Election Law so that a qualified voter, who acts in good faith, can exercise his right of franchise through the use of an absentee ballot.
Under subdivision 9 of section 117 the Board of Elections is required to make available to applicants for absentee ballots in readily accessible places the necessary printed application affidavits. It was conceded that these forms are frequently filled out at the office of the Board of Elections and that board officials assist the applicant in filling out the form. It would seem that assistance should be given by such officials so that the forms will, where the facts justify it, comply with the requirements of the Constitution and statute. Furthermore, the ordinary voter cannot be expected to express himself with the niceties of distinction or the perfection of the legally trained and a Board of Elections should make allowances for lack of detail in the explanation of 11 special circumstances ” supporting the application. The *83 important qualifications should rather be the right of the applicant to vote and the good faith of the applicant. The Legislature has set up adequate safeguards against illegal and fraudulent voting.
It is urged on behalf of the Board of Elections that had the Legislature intended that the words, “ duties “ occupation or business ’ should include health, it could have very easily provided therefor in section 117-a which became effective April 14, 1956. Section 117-a provides for persons who are ill and confined to their homes and not able to get to their polling place.
I do not agree with this contention. The provisions of subdivision 2 of article II of the State Constitution and section 117 of the Election Law relate to those persons who will be absent from the county at the time of election. Furthermore, the words “ duties, occupation or business ” are not the creature of the Legislature but find their origin in subdivision 2 of article H of the State Constitution itself. To specifically include the word “ health ” would require an amendment to the Constitution.
Section 117 of the Election Law was enacted pursuant to the direction of subdivision 2 of article II of the Constitution. I do not believe that the Legislature intended by section 117 to require Boards of Election and the courts to impose some rigid and technical interpretation upon the words, “ duties, occupation or business ” and thereby limit their application to an absence from the county of one’s residence only for business reasons.
This, I believe, is indicated by the reference in subdivision 3 of section 117 to a number of specific occupations which are sufficient in and of themselves to justify the issuance of an absentee ballot. There then follows the provision for the issuance of an absentee ballot upon the recital of special circumstances requiring one’s absence from the county. There then follows provision for the issuance of an absentee ballot to a spouse, parent or child of any person entitled to a ballot. There then follows provision for the issuance of an absentee ballot to inmates of veterans’ hospitals and students.
These deviations from strictly business purposes are clearly within the ordinary meaning of the word, “ duties ” used in the Constitution and statute. I can see no valid reason for interpreting the word “ duties ” as applying strictly to the business or occupation of the applicant as distinguished from its ordinary meaning.
Webster’s New International Dictionary (2d ed.) defines “ duty ” in the following language:
“ 2. That which is required by one’s station or occupation; any assigned service or business * * *
*84 ‘ ‘ 3. That which a person is bound by moral obligation to do or not to do; also, the moral obligation itself.”
While the reasoning of the court in Sheils v. Flynn (supra) which has been referred to at length herein, is directed toward the word “business” rather than “duties”, it nevertheless has great significance in determining the question here involved. It is certainly authority for the proposition that a person is the best judge of whether he is required to be unavoidably absent from his county and whether his reasons constitute “special circumstances”. It is also authority for the proposition that once an applicant in good faith, declares such facts under oath he is entitled to have them accepted as true for the purpose of being issued an absentee ballot.
The applications here under consideration are based upon absence required by the health of the voter. As such they must, in my opinion, be considered under the category of “duties” rather than “ business ” or “ occupation ”.
I believe that there are many situations which would justify a voter, in good faith, to consider that it was his duty to be unavoidably absent from his county. Some of those situations would involve his health, some would involve family obligations, some would involve an important obligation to a friend, a charitable agency, a religious organization, a service organization or any of the other countless duties which our citizens are called upon every day to perform gratuitously as a civic obligation.
Can it be seriously argued that one who goes on a business trip because it is his duty to do so should not lose his elective franchise but one who gratuitously gives of time and money to perform a family or civic duty and leaves the county of his residence to do so, should lose his elective franchise? I do not think so.
A good example would be a doctor serving as a member of a Board of Education without compensation. If he were required in performing such duties to be absent from his county on election day, it clearly would not be in connection with his business or occupation but it would nevertheless be in furtherance of a duty and accordingly, in my opinion, would qualify him for an absentee ballot.
Likewise can it be argued that if a person is compelled because of the condition of his health to absent himself from the county of his residence, that he is not performing a duty either to himself, his family or his community?
An excellent example of the. fallacy of the contention that a person is not entitled to an absentee ballot if he is required to *85 go south for his health because it is not a “duty” would be the following: A is directed by his doctor to spend the winter months in the south because of a serious illness. His employer gives him a leave of absence. He is required to have a nurse accompany him. The nurse could qualify for an absentee ballot as it would be in furtherance of her “occupation”. A could not. Let us say that A did not need a nurse but his wife would accompany him in that capacity. It is a wife’s legal as well as moral duty to be with and care for her husband. She might easily consider it a part of her occupation as housewife. Should a wife be denied an absentee ballot because her absence was not due to her business or occupation although it clearly was her duty to her husband to accompany him? I do not think so. If she were issued an absentee ballot, the following anomaly would result: A, as her spouse would automatically be entitled to a ballot under subdivision 4 of section 117. I do not believe the language of the Constitution should be so strictly interpreted or that the Legislature intended section 117 to impose such a rigid rule of enforcement.
This court will take judicial notice that in Northern New York there are many people who spend from one to four months in a warmer climate every year. Frequently they are life-long residents of this county. They desire to retain their official residence in this county. They cannot satisfy the residential requirements of the State of their winter residence in order to qualify as a voter there but are qualified voters of their own State and county. They naturally desire and should be encouraged to exercise their privilege to vote.
Some of these people g<o south because they are under doctor’s orders to do so. Some of them go solely on the recommendation of their physician. Some go to accompany members of their family who must go for reasons of health. Some of them own homes in the south which require care and supervision. Some of them are retired and go as a part of their everyday living. The position of qualified voters who are retired is worthy of consideration. Many persons today under our economy are compelled to retire either by law or by rule of their employer. Innumerable pension plans are in force to permit a retired person to maintain himself and his family. Many others, particularly self-employed business and professional people, have retired and support themselves upon their own savings. A great many spend all or a substantial part of the winter in the south. Obviously there are many reasons for doing so. Among the foremost are reasons of health, economy and family necessity. A great many must go under the orders of their physician *86 for their health but probably more go on the recommendation of their physician because it is common knowledge that warm weather and sunshine with the resultant avoidance of cold, damp, wet weather, icy and snowy conditions are very beneficial to the general health of elderly people who have retired.
It would not be unreasonable to say that the maintenance of oneself and family after retirement constitutes the business and occupation of a retired person. It is certainly true that it is the duty both legal and moral of a retired person not only to himself, his family and also to his community to support himself in the manner which will best assure the health, happiness and economic security of himself and his family. If such a person is compelled to be absent from his county for such purpose upon election day I am of the opinion that such a person is engaged in the performance of his “duties” as used in subdivision 2 of article II of the Constitution and section 117 of the Election Law. If such person satisfies the requirements as to qualifications as a voter and executes the application affidavit as to “special circumstances” in sufficient detail so that the Board of Elections can make a determination of their character, he is entitled to be issued an absentee ballot.
In respect to the application of Gerald W. Austin, I am of the opinion that the statement of special circumstances contained therein supported as it is by a doctor’s certificate, is sufficient to satisfy the requirements of subdivisions 1 and 3 of section 117, and that the action of the Jefferson County Board of Elections in refusing to issue an absentee ballot should be revoked and rescinded and the board directed to issue such ballot. This determination is without prejudice to the board to make any further investigation it deems necessary under the provisions of subdivision 5 of section 118, if for some reason that does not appear on the face of the application, it is not satisfied that an absentee ballot should be issued.
In respect to the application of May T. Coolidge, I am of the opinion that the statement of special circumstances contained therein, supported as it is by a doctor’s certificate, is sufficient to satisfy the requirements of subdivisions 1 and 3 of section 117 and that the action of the Jefferson County Board of Elections in refusing to issue an absentee ballot should be revoked and rescinded and the board directed to issue such ballot. This determination is without prejudice to the board to make any further investigation it deems necessary under the provisions of subdivision 5 of section 118 if for some reason that does not appear on the face of such application it is not satisfied that an absentee ballot should be issued.
*87 With respect to the application of Jessie Miller, it appears that such application was sworn to before a member of the central registration board, namely, the secretary of the Board of Elections of Jefferson County. Presumably it was prepared and executed at the Board of Elections. The facts are rather meager and this court cannot say the board was not justified in refusing to issue an absentee ballot. The determination of the question is one solely for the Board of Elections and not for this court. Under the circumstances further consideration seems advisable. This application is, therefore, remanded to the Board of Elections to make such investigation as they deem necessary to determine, in the light of the expressions contained in this opinion, the propriety of the issuance of an absentee ballot to Jessie Miller. This action is taken without prejudice to the applicant to submit additional proof to the Board of Elections in furtherance of the application in question or to submit a further application based upon additional facts.
In connection with the application of Adda B. Williams, the statement of special circumstances is not in my opinion sufficient in and of itself to justify the issuance of an absentee ballot. The application is, therefore, denied without prejudice, however to the said Adda B. Williams to file a new application, within the time permitted by statute, setting forth facts, if such facts exist, justifying the issuance of an absentee ballot in accordance with the provisions of this opinion.
Separate orders on each of the foregoing applications may be submitted, without costs.